STATE OF NEBRASKA, APPELLEE, V. JAMES A. DONALDSON III, APPELLANT.

452 N.W.2d 531

Filed March 9, 1990.   No. 89-168.

Dennis R. Keefe, Lancaster County Public Defender, and Scott P. Helvie for appellant.

Robert M. Spire, Attorney General, and Donald E. Hyde for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

The defendant, James A. Donaldson III, appeals from an order of the district court for Lancaster County affirming his conviction of violation of a charge of operating or being in the "actual physical control of any motor vehicle upon a public road while under the influence of alcoholic liquor or any drug or when such person has a concentration of .10 of one gram or more by weight of alcohol per one hundred milliliters of his urine . . . ." After a trial in county court, a jury found defendant guilty. Following an enhancement hearing, the county court found defendant's conviction was his third, and defendant was sentenced to 90 days in the Lancaster County jail, he was fined $500, and his driver's license was suspended for 15 years. Defendant timely appealed to the district court and then to this court.

In this court defendant assigns six errors, which, in summary, assert the district court erred in affirming the defendant's conviction in the county court, and the county court erred (1) in receiving in evidence a specimen of defendant's urine and the results of a chemical test performed thereon, (2) in receiving in evidence records of defendant's prior convictions and in determining this was defendant's third conviction for the offense, and (3) in determining that the evidence was sufficient to support the guilty verdict for the offense of driving while intoxicated. We reverse and remand for a new trial.

The record shows that on September 8, 1987, at approximately 10:30 p.m., defendant was stopped by a Lancaster County sheriff's deputy near 26th and O Streets in Lincoln. The officer stopped defendant's vehicle after hearing the sound of squealing tires and seeing defendant's vehicle come to a stop in the middle of an intersection controlled by a red traffic signal. The officer testified that the defendant had some difficulty retrieving his license from his wallet.

The officer testified that defendant had red eyes and a moderate odor of alcohol on his breath. The officer instructed

the defendant to perform some field sobriety tests. The officer testified defendant failed to recite the alphabet in full the first time, stopping with the letter $u$, and then recited the full alphabet but repeated the letter $v$ twice in that recitation. The officer testified that defendant had no difficulty in following directions to count to 10 and back. The officer did not notice any slurring of defendant's speech. Next, the officer instructed defendant to perform coordination and balance tests, and testified that, although defendant did not appear to have problems performing a finger-to-nose test, the defendant did not follow instructions. Defendant then performed a test where he stood feet together with hands to the side, tilting his head backward with eyes closed and back slightly arched. The officer testified the defendant swayed approximately 3 inches off center, which in the officer's opinion was more than normal for a sober individual. The defendant also failed to follow instructions while performing the "walk-the-line" test. The officer concluded that defendant was under the influence of alcohol, placed him under arrest, and transported him to the Lancaster County sheriff's office, where he submitted a urine sample that was tested for alcohol content.

In collecting the urine sample, the officer followed the procedure for the collection of urine for testing, as set out in 177 Neb. Admin. Code, ch. 1, § 005.02 (1986), which requires that the accused void his bladder 20 minutes prior to the time the test sample is taken. Accordingly, at 11:09 p.m., the officer directed defendant to void his bladder of urine, and that urine was discarded. At 11:42 p.m., defendant submitted a urine sample, and a later chemical test of that sample indicated that defendant's urine had a concentration of .526 grams of alcohol per 100 milliliters of his urine.

Defendant testified that he was a U.S. Navy veteran, having served 6 years with two 6-month Vietnam tours of duty. He testified that, at the time of his arrest, he suffered from various physical and emotional problems, including a vascular disease called Raynaud's disease, a posttraumatic stress disorder, a bipolar or manic-depressive disorder, and "Dismatic" disorder. He testified that he had been treated for these problems at various Veterans' Administration hospitals. He also testified

that his ability to concentrate on the officer's instructions was affected by his condition and that his red eyes stemmed from a medical condition called Reiter's syndrome. He further testified that he had numerous physical problems resulting from injuries he sustained in an auto accident. The defendant has vision and hearing impairments and was on medication at the time of the arrest. The arresting officer testified that defendant told him, before the field tests, that defendant was under a doctor's care and was taking medication.

Defendant admits that on the day he was arrested he had been drinking late in the afternoon and had a "couple . . . big gulps of whiskey" later in the evening shortly before leaving his apartment. He was stopped by the officer approximately 10 minutes later. He testified that he was not under the influence of alcohol while he was driving, but did admit that he began to feel the effects of the alcohol after he had been at the police station a short time.

Defendant's first summarized assignment of error alleges that the trial court erred in overruling defendant's objections to the admitting of the results of the chemical test performed on defendant's urine and the expert testimony regarding the results. It is within the trial court's discretion to admit or exclude evidence, and such ruling will be upheld absent an abuse of discretion. *State v. Hayden*, 233 Neb. 211, 444 N.W.2d 317 (1989). "Judicial abuse of discretion results when reasons or rulings of the trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition." *State v. Schall, ante* p. 101, 106, 449 N.W.2d 225, 229 (1989).

Defendant contends that the trial court erred in admitting the urine test results because the urine tested was not from urine that was in defendant's body at the time he was operating his vehicle and was irrelevant to the charge that defendant operated a vehicle when he had a concentration of ten-hundredths of 1 gram or more by weight of alcohol per 100 milliliters in his urine.

Defendant was charged with violating subsection (1) or (4) of Neb. Rev. Stat. § 39-669.07 (Supp. 1987). Section 39-669.07 provides in part:

It shall be unlawful for any person to operate or be in the actual physical control of any motor vehicle:

(1) While under the influence of alcoholic liquor or of any drug;

(2) When such person has a concentration of ten-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his or her blood;

(3) When such person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his or her breath; or

(4) When such person has a concentration of ten-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his or her urine.

The State contends that "[i]t is also clear from the various court decisions, and the face of the statute, that the alcohol/urine level is that amount present at the time of the test performed pursuant to methods and procedures set out by the Department of Health." Brief for appellee at 10. We first note that this statute, as amended in 1987, has not been construed by this court, nor are we directed to any court decision construing an identical statute. Nor can we say that it is clear from the face of the statute that the Legislature has forbidden a driver to operate a motor vehicle when he has a certain concentration of alcohol in his urine at a time more than an hour after he has ceased operating the vehicle.

The State maintains that the result of a chemical test performed on a urine sample submitted without following the procedure of title 177 of the Nebraska Administrative Code concerning initial voiding would only reflect " 'pooled' alcohol excretions" which provide no indication of whether the individual was under the influence of alcohol at the time he was driving. Brief for appellee at 9. With that statement we fully agree, as did the State's expert witness in this case. The difficulty is that after the 1987 amendment, the urine test is no longer used in a chemical test to determine the blood-alcohol content in a driver's "body fluid," apparently meaning blood. See *State v. Burling*, 224 Neb. 725, 400 N.W.2d 872 (1987). The current statute has established a "per se" standard; that is, it is now a violation, whether a driver is "under the influence" or

not, for a driver to operate or be in possession of a motor vehicle when there is a certain concentration of alcohol in his urine. The introducer of the 1987 amendment told the Legislature: "[I]nstead of converting to the blood alcohol content, we're establishing . . . three separate standards for breath, urine and . . . blood." Floor Debate, L.B. 404, Transportation Committee, 90th Leg., 1st Sess. 1429 (Mar. 4, 1987). Similarly, the committee statement, in considering the amendment, contained in part: "The bill retains the present standard for tests of blood, but eliminates the necessity for converting tests of breath or urine into blood alcohol content." Committee Statement, 90th Leg., 1st Sess. (Feb. 10, 1987).

It is a fundamental principle of statutory construction that penal statutes are to be strictly construed, and it is not for the Supreme Court to supply missing words or sentences to make clear that which is indefinite, or to supply that which is not there. *State v. Steele*, 224 Neb. 476, 399 N.W.2d 267 (1987).

Before the 1987 amendment, § 39-669.07 provided, in part, that it was unlawful to operate or be in actual physical control of any motor vehicle while under the influence of alcoholic liquor "or when that person has ten-hundredths of one per cent or more by weight of alcohol *in his or her body fluid as shown by chemical analysis of his or her blood, breath, or urine.*" (Emphasis supplied.) § 39-669.07 (Cum. Supp. 1986).

In 1987, § 39-669.07 was amended, in part, by changing the clause emphasized in the foregoing paragraph to read: "When such person has a concentration of ten-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his or her urine." § 39-669.07(4) (Supp. 1987).

Thus, there is no longer need for a determination of the blood-alcohol content by chemical analysis. The Legislature has amended the statute to provide for a "per se" violation consisting of driving or being in control of a motor vehicle at a time when the person has a certain concentration of alcohol in his urine. Section 39-669.07(4) (Supp. 1987) has but one logical interpretation. The word "urine" as used in § 39-669.07(4) refers only to the urine that is in an accused's body when the driver is operating, or is in control of, a motor vehicle. Consequently, insofar as 177 Neb. Admin. Code, ch. 1,

§ 005.02 (1986) requires voiding of a defendant's bladder, title 177 calls for the discarding of the very urine that must be tested in order to prove a violation of the offense under the amended statute. Voiding prevents the determination of the fact which is dispositive of the statutory violation.

In the case at bar, it is uncontroverted that the urine which was in defendant's body at the time he was driving was discarded pursuant to the regulation, and the sample tested was from urine obtained 33 minutes later. That urine was not in defendant's body when he was driving. There was no testimony connecting the concentration at the time of the test back to the time of the driving.

The expert witness for the State testified, on cross-examination, as follows:

Q. And if you void a bladder, say 20 minutes after you voided the bladder, then you take a sample hypothetically, okay?

A. Yes.

Q. So, we know for a fact that that urine was produced at least after the void, is that correct?

A. Yes.

Q. So, if the void occurred 30 minutes after someone was driving, we know that the urine that you're testing after the void was not in the body at the time of driving, don't we?

A. Yes.

Determining whether this evidence is of probative value is a legal question. The expert witness who performed the test on the sample clearly stated that the sample taken was not from urine that was in the defendant's body when he was operating his vehicle. In the absence of any testimony that the level of defendant's urine at the time of the testing could be related back to determine the concentration of alcohol in defendant's urine when he was driving, any relevance of the tested sample would be substantially outweighed by the danger of unfair prejudice or confusion of issues because the jury might find that defendant was guilty of a violation of § 39-669.07(4) because of the later urine-alcohol test. See Neb. Evid. R. 403 (Neb. Rev. Stat. § 27-403 (Reissue 1989)). It was error for the court to

admit the chemical test results and expert testimony thereon.

Error in admitting or excluding evidence in a criminal trial is prejudicial unless the State proves that the error was harmless beyond a reasonable doubt. *State v. Cox*, 231 Neb. 495, 437 N.W.2d 134 (1989). The error in this case was not harmless because the evidence, as admitted, indicated that defendant had a concentration of .526 of 1 gram or more by weight of alcohol per 100 milliliters of his urine at a time not relevant to a violation under subsection (4). The evidence was submitted, however, and the jury could well have found defendant guilty as charged if the jury determined that defendant was operating his automobile at a time when he had more than ten-hundredths of 1 gram by weight of alcohol per 100 milliliters of his urine. The jury also might have determined that defendant was guilty of driving while under the influence of alcohol based on the nonscientific driving "while under the influence" evidence before the jury. It is impossible to determine the basis of the jury's verdict.

The State offered no other evidence that would establish the concentration of alcohol present in the defendant's urine at the time he was driving the vehicle. Thus, there was no evidence presented at trial to support a possible jury finding that the defendant had a concentration of ten-hundredths of 1 gram or more by weight of alcohol per 100 milliliters of his urine. Since the jury returned a general verdict of guilty, we may not rely on the rule that, in a jury-waived trial, it will be presumed that the court does not consider improper evidence. The defendant is entitled to have a jury consider his guilt or innocence of driving while under the influence of alcoholic liquor without the prejudicial, irrelevant evidence of the urine test.

In so holding, we find that defendant's third summarized assignment of error is without merit. As set out above, there was evidence which, if believed by the jury, would support a finding that defendant was guilty of driving while under the influence of alcoholic liquor.

Since the cause is remanded for a new trial in county court, it is necessary to dispose of defendant's second summarized assignment of error, that the county court erred in determining that the defendant's conviction on the instant charge

constituted his third conviction for the offense of driving while intoxicated or while a certain concentration of alcohol was in his body fluid.

In this connection, the record shows that on July 12, 1984, defendant pled guilty to an amended complaint charging that on March 23, 1984, he was operating or in actual physical control of a motor vehicle when he had ten-hundredths of 1 percent or more by weight of alcohol in his body fluid. The original charge had included the phrase "Such being a second offense." The charge was amended from second offense to first offense. On July 12, 1984, defendant was found "guilty as charged." On October 5, 1984, defendant was sentenced to 7 days in jail, fined, and ordered not to operate a motor vehicle for 6 months.

On the same day as the above-discussed plea, July 12, 1984, defendant entered a plea of guilty to an amended complaint charging that on June 2, 1984, he was guilty of the same offense. This charge originally included the allegation that the June 2 offense was a second-offense charge because on January 31, 1981, defendant had been convicted of the same charge. On July 12, 1984, the prosection asked leave to amend the charge by striking second offense. After leave was granted to so amend the complaint, defendant pled guilty "as charged." Defendant was sentenced on October 5, 1984, to the same penalty as in the case set out in the preceding paragraph. The docket entry in this case included: "Jail sentences and suspensions to run concurrently." The same county judge entered orders in each case.

The record shows, therefore, that on the same day, defendant, with counsel, pled guilty to two first-offense driving while intoxicated charges and received concurrent sentences. The question presented is whether defendant's subsequent conviction would be a second offense or, as determined by the court, a third offense.

Defendant contends that the increasing penalties for successive offenses for driving or being in possession of motor vehicles under the conditions proscribed by the statute "closely parallel the Nebraska habitual criminal statute, §29-2221 [Reissue 1989]." Brief for appellant at 30. The State contends

that the issue is controlled by *State v. Orosco*, 199 Neb. 532, 260 N.W.2d 303 (1977), *overruled on other grounds, State v. Smith*, 213 Neb. 446, 329 N.W.2d 564 (1983). In *Orosco*, in connection with the point before us, the defendant was convicted of third-offense drunk driving and raised the defense made in this case. The court stated:

> The two prior convictions were each charged as first offenses. The defendant contends that, before a third offense charge can be made, the defendant must first have been charged, convicted, and punished as a second offender under section 39-669.07 (2), R. R. S. 1943. He cites no authority for this proposition. We do not so read the statute. We hold that to be punished as a third offender, it is necessary only that the defendant be charged and found to have been twice previously convicted of driving while under the influence of intoxicating liquor.

*State v. Orosco, supra* at 543, 260 N.W.2d at 310.

Similarly, we hold the trial court could properly hold, in this case, that if defendant were convicted, it could be defendant's third conviction. To constitute a third-offense violation of § 39-669.07, it is necessary only that a violator be properly convicted of two previous violations of § 39-669.07, whether the earlier convictions be called first offense or second offense.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR A NEW TRIAL.

WHITE, J., concurring.

As the majority points out, the Legislature has created an offense which is defined by the amount of alcohol in the urine at the time the driver is arrested or stopped on suspicion of driving a motor vehicle while intoxicated. The offense assumes a relationship between alcohol in the blood, which affects the ability to operate a motor vehicle safely, and alcohol in the urine, which affects the intellectual and motor skills of an operator not at all.

The majority points out that the process of voiding and then testing a subsequent elimination after a period of time is not consistent with the crime created by the Legislature.

This initial voiding and subsequent testing of newly created

and eliminated urine has been described as, at best, an unreliable indicator of alcohol content in the blood. The legislative test of immediate elimination and testing is of no probative value at all. The driver who, after a drinking bout, allows the passage of time sufficient to have allowed the blood to have freed itself from alcohol will, prior to elimination of the urine, have a concentration of alcohol in his urine sufficient to declare him legally drunk and, yet, be completely sober.

With the availability of blood and breath tests, the urine test for alcohol ought to be simply abandoned as unreliable, unworkable, and in many situations, totally unjust.

SHANAHAN, J., joins in this concurrence.