STATE OF NEBRASKA, APPELLEE, V. STEAVE BALTIMORE,
APPELLANT.
463 N.W.2d 808

Filed December 7, 1990.    No. 89-770.

Thomas M. Kenney, Douglas County Public Defender, and
Brian S. Munnelly for appellant.

Robert M. Spire, Attorney General, and Susan M. Ugai for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

Defendant, Steave Baltimore, appeals a jury verdict finding him guilty of two counts of unlawful possession with intent to deliver a controlled substance, contrary to Neb. Rev. Stat. § 28-416 (Cum. Supp. 1988). One count was a Class III felony, the other a Class IV felony. The defendant was sentenced to two concurrent terms of imprisonment for 5 years.

Defendant assigns as error (1) the admission of evidence contrary to Neb. Rev. Stat. § 27-403 (Reissue 1989), (2) the sustaining of the State's motion in limine regarding the introduction of alleged exculpatory evidence, (3) the allowing of a strike by the prosecutor of a black prospective juror from the jury panel, (4) the denying of defendant's motion for a mistrial, and (5) the excessiveness of the sentences. We reverse.

Undercover Police Officer Kevan Barbour testified that on the evening of August 31, 1988, at approximately 9 o'clock, he was walking past a residence located at 2517 Burdette Street in Omaha. He stated that the defendant, who was sitting on the front porch, called him, Barbour, off the street. The defendant said to "come over to this side." Barbour asked the defendant "if anything was happening," at which time the defendant produced a rolled-up cigarette package and asked Barbour what he needed. Barbour replied that he wanted a 50-cent piece, street talk for a $50 "rock" of crack cocaine. The defendant put the cigarette package away and told Barbour that he did not sell crack.

Barbour then walked away, but knew that soon afterward members of the narcotics unit would execute a search warrant at this same residence. Later that evening, Barbour was directed by his commanding officer to conduct a "reverse sting operation" at that same residence. This is a procedure whereby undercover police officers locate themselves at an area where they believe parties are coming to buy illegal drugs and then the officers make the sales. Barbour returned to the Burdette Street

residence, seated himself on the same porch, and at approximately 10:15 p.m. sold two Ritalin and two Talwin tablets, both controlled substances, to a third party, Eric McGee. The defendant was no longer at this location. This testimony was received over the objection of the defendant as to "relevancy, foundation, relief under 403."

On cross-examination Barbour admitted that he did not know if the utilities at the residence were registered to the defendant, nor did he know who owned the particular property. There was no evidence that the defendant permanently resided at these premises.

On redirect examination Barbour was permitted to testify over objection that in street terms the phrase "Is anything happening?" as used by people in the drug culture means "are you—do you have any type of drugs for sale, or are you in pocket?" His testimony in this regard was based on his experience in police work for over 5 years, with participation in approximately 75 setup drug sales.

According to a stipulation between the parties, if a certain representative of the Omaha Public Power District were called to testify, that testimony would be that service was provided to this particular residence and billed to a party by the name of Lola Harris.

William Ihm, a chemist, identified certain pills or tablets contained in an envelope marked exhibit 5 as Ritalin and Talwin, both controlled substances.

Kurt Sorys, an Omaha police officer, testified that he was part of the team which executed a search warrant at 2517 Burdette Street on August 31, 1988. As Sorys approached the house, he saw the defendant and two women on the porch. He shined his flashlight at them and saw the defendant drop his right arm and with his hand make a "little kind of a toss or flicking action and an object left his hand." Another officer, Dennis Clark, came to the scene in about 5 or 10 seconds and was told by Sorys about the incident. Clark went over to the area right below the porch and retrieved a cigarette package.

Officer Clark testified as to his involvement in the execution of the search warrant and how he searched for and found the cigarette package on the ground. He identified that cigarette

package as the one placed in the envelope marked exhibit 5.

The defendant did not testify. He did call as a witness a physician, an internal specialist, Jack Lewis, who testified to the fact that from his examination of the defendant he would not have been able to "toss, flip or throw an object with his right hand."

By way of rebuttal, Dora McDavis was called by the State and testified that she saw the defendant once a month. She did not testify as to what her occupation might be or what was the occasion of her meetings with the defendant. However, defense counsel moved for a mistrial on the theory that "the testimony of Mrs. McDavis is that he has now shown a pattern of reporting, which is a kissing cousin to a probation officer inquiry and regiment." The motion was overruled. McDavis testified that she observed the defendant write and smoke with his right hand. She admitted on cross-examination that defendant's fingers did not move the pen; rather, his hand moved the pen.

We deal first with the reverse sting operation. Defendant argues that evidence of such an operation was prohibited by § 27-403, which provides as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The responsibility for maintaining the balance between the probative and the prejudicial effect of evidence is largely within the discretion of the trial court. *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989). We have also said innumerable times that a trial court's ruling on the relevancy of evidence will not be disturbed on appeal unless there has been an abuse of discretion. *State v. Porter*, 235 Neb. 476, 455 N.W.2d 787 (1990). We take this opportunity to amplify or clarify this rule to state that as to evidence which is relevant, the decision of the trial court as to whether "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative

evidence," § 27-403, will not be disturbed on appeal unless there has been an abuse of discretion.

However, the issue in this instance is purely one of relevance within Neb. Rev. Stat. § 27-401 (Reissue 1989): "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The State contends that Officer Barbour's testimony presented facts from which a logical inference could be drawn that defendant was in the business of selling drugs. Defendant was at a particular location, 2517 Burdette Street, and whether or not he lived there or had any substantial interest in the premises, it was obvious that he was operating from that location on that occasion. Whether a location is one where drugs may customarily be purchased may also be determined by way of inference from stated facts, according to the State's argument. In this instance, the third party who purchased drugs from Officer Barbour voluntarily came over to the front porch of the house and engaged in a dialogue with Barbour which resulted in the purchase of drugs.

> There are two components to relevant evidence: materiality and probative value. Materiality looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial. What is "in issue," that is, within the range of the litigated controversy, is determined mainly by the pleadings, read in the light of the rules of pleading and controlled by the substantive law. . . .
>
> The second aspect of relevance is probative value, the tendency of evidence to establish the proposition that it is offered to prove. . . .

McCormick on Evidence § 185 at 541 (E. Cleary 3d ed. 1984).

> [T]he function of the doctrine of relevance is to require that there be some rational connection between the evidence offered by a litigant and the legal rule on which he claims a right to recover. . . . "Relevancy . . . exists only as a relation between an item of evidence and a matter

properly provable in the case."
22 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5164 at 37 (1978) (quoting Notes of Advisory Committee on Proposed Rules, Fed. R. Evid. 401). To be relevant, evidence must be rationally related to an issue by a likelihood, not a mere possibility, of proving or disproving the issue to be decided. *State v. Robertson*, 219 Neb. 782, 366 N.W.2d 429 (1985).

Barbour's testimony regarding the sale to McGee was neither material nor probative. By the charge against Baltimore, the issue was whether he possessed Ritalin and Talwin with intent to distribute, deliver, or dispense the controlled substances. The sting operation at the house to which Baltimore had no connection, other than his sitting on the porch, did not tend to prove the issues in the prosecution, namely, Baltimore's unlawful possession of a controlled substance and intent to distribute the controlled substance, and supplied no rational connection to a violation of the criminal statute under which the State sought Baltimore's conviction.

Besides being immaterial, evidence concerning the sting operation lacked probative value, the second inquiry involved in a relevance determination.

"Probative value is a relative concept; the probative value of a piece of evidence involves a measurement of the degree to which the evidence persuades the trier of fact that the particular fact exists and the distance of the particular fact from the ultimate issues of the case."
*State v. Bostwick*, 222 Neb. 631, 639, 385 N.W.2d 906, 912 (1986) (quoting Dolan, *Rule 403: The Prejudice Rule in Evidence*, 49 S. Cal. L. Rev. 222 (1976)). Quite obviously, evidence of the sting operation was offered to prove Baltimore's involvement in similar controlled substance transactions at the Burdette Street residence. However, evidence of a controlled substance sale to an individual who had no association with Baltimore did not tend to prove Baltimore's involvement in other controlled substance transactions which may have occurred at the residence where Barbour encountered Baltimore. Evidence of the sting operation presented facts which were far removed from the ultimate issues in the charge

against Baltimore, which evidence, lacking probative value, was, therefore, irrelevant. "In sum, relevant evidence is evidence that in some degree advances the inquiry." McCormick on Evidence, *supra* at 544. Here, the evidence did not.

In *State v. Robertson, supra* at 791, 366 N.W.2d at 435, we stated: "Our system of criminal justice does not recognize mere association as a premise for guilt." The evidence about the sting operation was erroneously admitted.

Assuming, without deciding, that there was sufficient evidence to convict Baltimore of possession with intent to distribute or deliver, without the evidence of the reverse sting, we cannot say that the admission of the evidence of the reverse sting was harmless beyond a reasonable doubt in view of the minimal quality of that remaining evidence bearing on defendant's intent. Error in admitting evidence in a criminal case is prejudicial unless the State proves that the error was harmless beyond a reasonable doubt. *State v. Donaldson*, 234 Neb. 683, 452 N.W.2d 531 (1990); *State v. Cox*, 231 Neb. 495, 437 N.W.2d 134 (1989).

We sustain the first assignment of error, and because this requires a reversal and new trial, we need not consider the other assigned errors, as they may not be involved in a second trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

HASTINGS, C.J., dissenting.

In my opinion, the description of the sting operation made more probable the State's assertion that a pattern of drug activity surrounded this residence. The drug activity encompassing 2517 Burdette Street provided the defendant the opportunity to participate in this drug activity. Whether or not he lived there or went there on a regular basis, the evidence disclosed that he operated in a more than happenstance fashion. The testimony tended to show that McGee, the third-party purchaser, had purchased drugs at this location on other occasions or knew that drugs could be purchased there. Also, this testimony was relevant because it made it more probable that the drugs found at the residence and held by the defendant were held for delivery or distribution.

I would have affirmed the judgment of the district court.

BOSLAUGH, J., joins in this dissent.