STATE OF NEBRASKA, APPELLEE, v. DARIUS N. CHRISTIAN, APPELLANT.

465 N.W.2d 756

Filed February 22, 1991.   No. 89-1474.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Robert M. Spire, Attorney General, and Barry Waid for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

Following a jury trial, the defendant, Darius N. Christian, was convicted of unlawful possession with intent to deliver cocaine, a Class II felony, and was sentenced to imprisonment for 4 to 7 years. He has appealed and contends that the trial court erred in admitting, over objection, testimony concerning certain of his prior acts.

The evidence, when viewed in the light most favorable to the State, shows the following: At about 8:30 p.m. on June 24, 1989, Omaha Police Officers Daniel Clark and Charles Matson responded to a call concerning a disturbance at a lounge located at 4020 Lake Street in Omaha, Nebraska. The complaining party informed the officers that he had been confronted by a vanload of "Blood" gang members, one of whom had pointed a handgun at him and threatened to fight him. The complaining party further reported that the van was a blue Ford that was being driven eastbound on Lake Street and that other people in

the van were also armed.

Approximately 20 minutes later, Officers Clark and Matson answered an "intrusion alarm" at a nearby grade school. While checking the school for signs of forced entry, Officer Clark saw the defendant running from the area "with his head tilted forward and his right arm in front of his body as if he was cradling something." Suspicious of his flight and the manner in which he was carrying his arm, Officer Clark immediately pursued the defendant.

While in pursuit, Officer Clark saw the defendant look over his shoulder, so the officer shouted for the defendant to stop, but the defendant did not stop. Officer Clark then noticed that the defendant was approaching a blue Ford van with a number of parties standing around it. The Ford van was similar to the van that had been described by the complaining party who had been confronted by the Bloods earlier that evening, so Officer Clark drew his weapon and continued to run after the defendant. With Officer Clark closing the gap, the defendant ran past the van and the people near it, and proceeded toward a storm sewer opening.

As the defendant neared the sewer opening, Officer Clark saw, from a distance of 10 feet, the defendant run up to the sewer opening, bend over, and make a furtive movement with his hand, as if he were dropping something. The defendant then stood up and acted as if he had put something into his mouth, turned, and started walking away. Officer Clark apprehended the defendant and radioed for a backup. When the backup arrived, the defendant was placed under arrest, along with the parties standing around the van. Officer Clark then returned to the sewer opening and retrieved a baggie of cocaine from where he had seen the defendant place it. The defendant denied having had possession of the cocaine.

After his arrest, the defendant, along with the vanload of Bloods, was taken to police headquarters for questioning. Officer Matson advised the defendant of his constitutional rights, and the defendant voluntarily agreed to discuss the matter. Officer Matson then employed interrogation techniques involving untrue statements, in an effort to elicit a statement from defendant.

First, Officer Matson told the defendant that fingerprints had been lifted from the baggie, and he asked the defendant how his prints would be on the baggie. (No fingerprints were ever discovered on the baggie of cocaine.) The defendant responded that he had been at a "cooker," i.e., a place where individuals make crack cocaine, earlier in the day and that while there he had touched some empty baggies which were lying around. Second, Officer Matson informed defendant that the officer had a pink fluid which, when applied to the defendant's fingertips, would turn blue if he had recently touched cocaine. (The fluid would turn blue regardless of the substance on defendant's fingertips.) The defendant explained to Officer Matson that his fingertips would probably turn blue because the night before he had rolled a "primo joint," i.e., a marijuana and cocaine cigarette, for a friend at an after-hours place and that cocaine residue probably still remained on his hands.

At trial, over objection, Officer Matson was allowed to testify about (1) the defendant's presence at the cooker and (2) the defendant's rolling the primo joint. These two events were explored in detail on defendant's direct and cross-examination.

The defendant's sole contention on appeal is that the trial court erred in admitting, over objection, testimony concerning the defendant's custodial statements about (1) his presence at the cooker and (2) his rolling the primo joint. The defendant argues that this testimony concerned "prior bad acts" and thus, under Neb. Rev. Stat. § 27-404(2) (Reissue 1989), should not have been admitted.

At the time of the offer of the testimony of Officer Matson, who had conducted the interrogation of the defendant, the defendant had not testified and there had not been any representation that he would testify at the conclusion of the State's case. Hence, his credibility was not then in issue, and the testimony concerning his custodial statements was not offered for that purpose. The State explained that the testimony was relevant as to proof of possession and intent concerning the crime charged.

Evidence of prior bad acts may be introduced under § 27-404(2) whenever the evidence is relevant, so long as it is offered to prove something other than the bad character of the

accused or his tendency to commit criminal acts. *State v. Kenny*, 224 Neb. 638, 399 N.W.2d 821 (1987). Section 27-404(2) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *State v. Yager*, 236 Neb. 481, 461 N.W.2d 741 (1990), this court held that in reviewing the admission of evidence of other acts under § 27-404(2), an appellate court will consider (1) whether the evidence was relevant, (2) whether the evidence had a proper purpose, (3) whether the probative value of the evidence outweighed its potential for unfair prejudice, and (4) whether the trial court, if requested, instructed the jury to consider the evidence only for the purpose for which it was admitted.

It is within the discretion of the trial court to determine the admissibility of evidence of other wrongs or acts, and its decision will not be reversed absent an abuse of that discretion. *State v. Oliva*, 228 Neb. 185, 422 N.W.2d 53 (1988); *State v. Ryan*, 226 Neb. 59, 409 N.W.2d 579 (1987); *State v. Thomas*, 232 Neb. 490, 441 N.W.2d 186 (1989); *State v. Wakeman*, 231 Neb. 66, 434 N.W.2d 549 (1989).

First, we consider whether the evidence that the defendant had visited a cooker and had rolled a primo joint was relevant to the offense with which he was charged.

The defendant's admission that he had been present at a cooker on the day of his arrest and that he had rolled a primo joint on the night before was relevant because it showed his familiarity with the controlled substance which he had in his possession at the time of his arrest. It tended to show opportunity, knowledge, and absence of mistake or accident. We conclude that evidence as to the two prior acts involving drugs was relevant to prove the defendant's possession of crack cocaine with intent to distribute. The incidents took place some hours before the defendant was caught with drugs. The fact that the defendant had been at a cooker tends to make the fact

of his intent to deliver cocaine more probable than not.

Evidence of prior acts is always prejudicial if it tends to establish the defendant's guilt. However, such evidence is admissible if relevant unless it is unfairly prejudicial in the sense that it tends to make the conviction of the defendant more probable for an incorrect reason. We conclude the evidence in question was not unfairly prejudicial to the defendant.

The State further contends that even if the evidence in question should not have been admitted, the evidence of the defendant's guilt was overwhelming, and any error in receiving the evidence in question was harmless beyond a reasonable doubt.

This court may affirm the judgment if, after consideration of the record, the court finds that the admission of the evidence in question was harmless beyond a reasonable doubt. *State v. Olsan,* 231 Neb. 214, 436 N.W.2d 128 (1989); *State v. Watkins,* 227 Neb. 677, 419 N.W.2d 660 (1988); *State v. Lenz,* 227 Neb. 692, 419 N.W.2d 670 (1988).

" 'Harmless error exists in a jury trial of a criminal case when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in a verdict adverse to a substantial right of the defendant.' " *State v. Pettit*, 233 Neb. 436, 465, 445 N.W.2d 890, 907-08 (1989), quoting *State v. Watkins, supra.*

The defendant's possession of the cocaine was established by the eyewitness testimony of Officer Clark, who saw the defendant place the baggie near the opening to the storm sewer while the officer was chasing the defendant. The baggie contained crack cocaine having a value of $800 to $1,000. This evidence is nearly conclusive on the element of intent to deliver. Under the circumstances in this case, any error in the admission of evidence concerning the defendant's presence in the cooker and his rolling the primo joint was harmless beyond a reasonable doubt.

The judgment is affirmed.

AFFIRMED.