STATE OF NEBRASKA, APPELLEE, V. RANDY SALYERS, APPELLANT.
480 N.W.2d 173

Filed February 14, 1992.   No. 90-715.

James C. Stecker, of Robak & Stecker, for appellant.

Don Stenberg, Attorney General, and Donald A. Kohtz for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Randy Salyers appeals certain terms of his 3-year probation, which was imposed after he entered a plea of guilty to an amended complaint charging him with third degree assault of his wife. As a term of probation, the defendant was also ordered to pay a $500 fine.

The defendant was originally charged with the felony offense of sexual assault in the first degree of his wife, which carries a penalty of not less than 1 nor more than 50 years' imprisonment. See Neb. Rev. Stat. §§ 28-319 and 28-105 (Reissue 1989). Pursuant to a plea agreement, Salyers entered a plea of guilty to assault in the third degree. On that charge, he could have been sentenced to 1 year in jail, fined $1,000, or both, since assault in the third degree is a Class I misdemeanor. See Neb. Rev. Stat. §§ 28-310 and 28-106 (Reissue 1989).

In summary, Salyers claims the trial court, in imposing probation, erred by (1) requiring the defendant to serve the first 40 days he is not working in the county jail and (2) prohibiting the defendant from entering bowling alleys. The defendant appealed the sentence imposed by the county court to the district court for Platte County, where the sentence was affirmed. The defendant then appealed to this court.

Because the condition of probation regarding Salyers' exclusion from bowling alleys is ambiguous, we vacate the defendant's sentence and remand the cause to the district court for Platte County with directions to remand the cause to the county court for resentencing of the defendant in accord with the rules set forth in this opinion.

Before the assault involved here, bowling was a common activity for both Salyers and his wife. The defendant was

involved in bowling league activities, having served as his league secretary and as an officer in the Columbus Men's Bowling Association in 1990. He had won several individual bowling championships in 1989 and 1990. Salyers' wife had worked in the Westbrook Lanes bowling alley in Columbus in 1985 when she and the defendant first met. At the time Mrs. Salyers was assaulted, she also bowled in a league.

On the night of February 28, 1990, the defendant and his wife were at the Boulevard Lanes bowling alley in Columbus, where they attended a party for a mutual friend. Salyers "had a few beers" in the bowling alley bar or lounge. He questioned his wife's fidelity to him. The defendant's wife became angry and went home alone.

When the defendant went home, he attempted to have sexual relations with his wife. When she refused, Salyers followed her into the bathroom, where he physically and sexually assaulted her. The wife's screams awakened the couple's 2-year-old son. Mrs. Salyers convinced the defendant to let her go to attend to their son. Salyers' wife ran from her husband and hid from him in her 11-year-old son's basement room. From her hiding place, Mrs. Salyers saw her husband searching for her with a shotgun. The defendant later said the shotgun was unloaded, but that his wife did not know that it was unloaded. He told the court he wanted to "scare" his wife "to come upstairs and talk with me." Salyers admitted he picked up the shotgun to "threaten" his wife.

The wife then went to her 15-year-old daughter's room and told her everything that had happened. The police were called. After evacuating other members of Salyers' family from the residence, police found the defendant passed out in his bed, where they arrested him.

There appear to be discrepancies between what the trial judge ordered in open court and the order of probation prepared by the probation officer. As an example, in the verbatim record, the trial judge, as a part of probation, ordered that Salyers spend 40 days in jail, to be served on weekend days when he did not have to work. In the written probation order, the defendant was ordered to spend 40 days in jail on weekends. In the written order, there was no provision excusing him from

jail on days of a weekend when he had to work. In the verbatim record, the defendant was ordered to "[s]tay out of all bars, including bowling alleys, 'cause apparently you do some drinking in bowling alleys. Or otherwise whose principle [sic] business is the sale of alcohol or a considerable amount of alcohol is being consumed on the premises." In the written order, it is stated that the defendant shall "[n]ot enter any place where alcohol is primarily served or sold, nor any bowling alleys for the period of probation without written permission of your Probation Officer."

We have held that where there is a conflict between the record of a judgment and a verbatim record of the proceedings in open court, the latter prevails. *State v. Temple*, 230 Neb. 624, 432 N.W.2d 818 (1988). We have also held that in imposing sentence, the court should state with care the precise terms of the sentence which is imposed. *Id*. This same rule applies to the terms of probation imposed upon a defendant.

In addition to the conflicts between the verbatim record and the written order of probation, there is ambiguity in some terms of Salyers' probation. As an example, is Salyers ordered to stay away from bowling alleys altogether? Or is the defendant prohibited from entering bowling alleys where there is a bar on the premises or a bar connected by a doorway to the bowling alley? Or is the defendant only ordered to stay out of the bars in a bowling alley?

We further note that in the written order of probation, Salyers must "[s]atisfy other conditions of which you are notified in writing by your Probation Officer which are reasonably related to reconstructing your behavior and the protection of society." Any condition imposed under this provision of a probation order would be improper. We remind sentencing judges that the fixing of terms and conditions of probation is a judicial duty and function and cannot be delegated to anyone, including a probation officer. See *Ensrud v. Ensrud*, 230 Neb. 720, 433 N.W.2d 192 (1988).

Salyers argues that his intermittent incarceration as a term of probation is erroneous. His reliance upon *State v. Texel*, 230 Neb. 810, 433 N.W.2d 541 (1989), for that position is misplaced. In *State v. Texel*, we held that it is error for a trial

court, when imposing a straight jail sentence, to permit or require a defendant to serve his or her sentence intermittently. We have found no statute authorizing a court to impose an intermittent jail sentence when a defendant is given a straight jail sentence. There is, however, statutory authority for intermittent incarceration as a condition of probation. Neb. Rev. Stat. § 29-2262 (Reissue 1989) provides:

> (2) The court, as a condition of its sentence, may require the offender:
>
> . . . .
>
> (b) To be confined *periodically* in the county jail or to return to custody after specified hours, but not to exceed (i) for misdemeanors, the lesser of ninety days or the maximum jail term provided . . . for the offense . . . .

(Emphasis supplied.)

The defendant argues that the intermittent incarceration imposed as a condition of his probation denies him the opportunity to reduce his sentence pursuant to Neb. Rev. Stat. § 47-502 (Reissue 1988), which provides:

> Any person sentenced to a city or county jail shall have his or her term reduced seven days for each twenty-one *consecutive* days during which he or she has not committed any breach of discipline or other violation of jail regulations. The reductions authorized by this section shall be granted at the end of each period of twenty-one days, with such periods to run consecutively from the date of confinement following sentencing.

(Emphasis supplied.)

The defendant contends that § 47-502 should be applied with equal force to probationers serving intermittent sentences as it is to inmates serving straight jail sentences.

In analyzing this issue, we note first that when statutory language is plain and unambiguous, no judicial interpretation is needed to ascertain the statute's meaning, so that, in the absence of a statutory indication to the contrary, words in a statute will be given their ordinary meaning. *State ex rel. Gaddis v. Gaddis*, 237 Neb. 264, 465 N.W.2d 773 (1991). It is a fundamental principle of statutory construction that penal statutes are to be strictly construed, and it is not for the courts

to supply missing words or sentences to make clear that which is indefinite, or to supply that which is not there. See *State v. Donaldson*, 234 Neb. 683, 452 N.W.2d 531 (1990).

Section 47-502 specifically applies to jail inmates who have served 21 consecutive days. It is beyond the purview of this court to assume that the Legislature intended that § 47-502 apply to probationers who are sentenced to intermittent sentences authorized by § 29-2262 and who serve their sentences on weekends in order to accommodate their work schedules.

In his second assignment of error, Salyers attacks the provision of his probation order that, he says, restricts him from entering bowling alleys. The defendant argues that his attendance at bowling alleys was not related to his crime, nor is it related to his rehabilitation. Salyers is mistaken on both counts.

Section 29-2262 provides:

> (1) When a court sentences an offender to probation, it shall attach such reasonable conditions as it deems necessary or likely to insure that the offender will lead a law-abiding life.
>
> (2) The court, as a condition of its sentence, may require the offender:
>
> . . . .
>
> (p) To satisfy any other conditions reasonably related to the rehabilitation of the offender.

Salyers had been drinking beer at a bowling alley before he went home and sexually assaulted his wife. The defendant was passed out on his bed when he was found by police shortly after he had assaulted his wife. In sentencing the defendant, the trial judge remarked about Salyers' 10-year history with alcohol. The court noted, and Salyers agreed, that in 1980 the defendant went to Methodist Hospital Eppley Center in Omaha for inpatient treatment. He was diagnosed as suffering from chronic alcoholism. Salyers left without completing treatment and without permission because he "didn't want to hang around there any more." The court had also reviewed the defendant's alcohol-related offenses. The defendant's record of alcohol-related offenses began in 1971 when he was fined for

being a minor in possession of alcohol. Salyers was convicted of driving while under the influence of alcoholic liquor in 1979. In 1981, the defendant was placed on probation for 1 year and incarcerated for 90 days for obstructing a peace officer. Police officers had to physically subdue Salyers. The officers became involved with Salyers after the defendant, who was intoxicated, got into a fight with his father in their home. Also in 1981, Salyers was given a year's probation and 90 days in jail for the unauthorized use of a propelled vehicle. The defendant admitted to drinking the night of that crime. As part of his probation in 1981, Salyers was required to attend Alcoholics Anonymous meetings for 6 months.

Following the assault on his wife, Salyers was evaluated as a "problem drinker." In sentencing the defendant, the trial court told Salyers, "[Y]our own drinking is when you get in the insane jealous moods." The court told the defendant, "[A]pparently you do some drinking in bowling alleys." It was in a bowling alley bar or lounge on February 28 that Salyers had drunk beer before going home and assaulting his wife.

It is obvious that in fixing the terms of Salyers' probation, the sentencing court was concerned with Salyers' being a "problem drinker." It is also obvious that Salyers enjoyed drinking with his friends in bowling alleys. The availability of alcoholic beverages there apparently tempted Salyers to drink. Under the circumstances of this case, drinking in a bowling alley directly related to Salyers' assaulting his wife. Since bowling alleys are where Salyers did some of his drinking, it can be said that a restriction of the defendant's attendance at bowling alleys is related to the rehabilitation of the defendant.

Although the trial court needs to be more precise in setting forth its conditions of probation, the defendant's argument that no restriction should be placed upon his entering a bowling alley is without merit.

We vacate the sentence of the defendant and remand the cause to the district court for Platte County with directions to remand it to the county court with instructions to resentence the defendant.

SENTENCE VACATED, AND CAUSE REMANDED
WITH DIRECTIONS.

GRANT, J., participating on briefs.