STATE OF NEBRASKA, APPELLEE, V. ANTHONY T. REYNOLDS, APPELLANT.

483 N.W.2d 155

Filed May 1, 1992.    No. S-91-087.

Thomas J. Garvey, Sarpy County Public Defender, and Robert C. Wester for appellant.

Don Stenberg, Attorney General, and Donald A. Kohtz for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

Following a jury trial, the defendant, Anthony T. Reynolds, was convicted of first degree assault and sentenced to imprisonment for 2 to 4 years. The defendant has appealed and contends that the trial court erred in admitting, over objections as to relevancy, certain testimony.

The assault involved the defendant's 4-month-old son. As a result of the assault, the child developed shaken baby syndrome, and his development has been seriously impaired.

The record shows that on February 26, 1990, at about 4 p.m., Carrie Reynolds, wife of the defendant, left for work and left their 4-month-old son, Justin Reynolds, with the defendant. That afternoon Justin was fussy, cranky, and whiny and wanted a lot of attention; however, before she left for work, Justin had calmed down and was doing fine. At about 7 p.m., when Carrie called home to check on the defendant and Justin, the defendant told her that Justin had been fine since she left.

At about 9:58 p.m., the defendant called Carrie at work, told her that there was something wrong with Justin, and said that she should come to the hospital. When Carrie arrived at the hospital, Justin was lying unconscious in the emergency room, with oxygen being pumped into his mouth.

Carrie was not informed of what was wrong with Justin until a few days after the incident. At that time, she was told that Justin had suffered a brain hemorrhage and that the injury and hemorrhage had caused Justin's brain to swell to the point that the brain's oxygen supply had been cut off and Justin had stopped breathing. It was explained to her that Justin was a victim of shaken baby syndrome.

At trial, Dr. Mark Horton, a pediatrician, testified as a medical expert on shaken baby syndrome. He testified that an infant suffering from a violent shaking exhibits a breathing or respiratory problem and convulsions or seizures. The infant may appear lethargic or unarousable and/or may incur a subdural or subarachnoid hemorrhage.

Dr. Karlyle Christian-Ritter, pediatric chief resident at St. Joseph Hospital, testified that on February 26, 1990, Justin Reynolds was brought to the hospital. When Justin arrived at the emergency room, he was not breathing on his own, appeared lethargic, and was unresponsive. She also observed that he had a bulging fontanel (soft spot on the head) and a retinal hemorrhage in the left eye.

Following a CAT scan, Christian-Ritter determined that Justin had a left subdural hematoma. After further tests were run, infection was ruled out, and Justin was diagnosed as being a shaken infant because his symptoms indicated brain trauma and there were no outward signs of bruising or physical abuse.

Three other physicians testified at the trial regarding their examination and findings concerning Justin's medical condition. All were of the opinion that his injury was life threatening. Two of the physicians opined that Justin's injury was most likely due to a violent shaking.

Charles Clark, an investigator for the Bellevue Police Department, interviewed the defendant as part of his investigation and was told by the defendant that earlier in the afternoon of February 26, 1990, he had been bouncing Justin on his hip in an attempt to get Justin to stop crying. The defendant said that he was not paying much attention to how he was holding Justin because he just wanted Justin to stop crying.

The defendant also told Clark that later that evening after defendant took a shower, he went to get Justin up, and Justin appeared lethargic and was having difficulty breathing. The defendant attempted to arouse Justin by shaking him. When Justin did not respond, the defendant shook Justin harder a second time.

The defendant testified that after Carrie left for work that day, Justin was fine and that there were no problems. The defendant fed Justin and put him down to sleep. When he tried

to wake Justin up later that evening, the defendant noticed that Justin would not respond and was having difficulty breathing. The defendant testified that he panicked and began to shake Justin because he thought Justin was suffering from sudden infant death syndrome. There is a history of that syndrome in defendant's family.

The defendant contends that certain testimony by his wife which was admitted into evidence over his objections was irrelevant and prejudicial.

Carrie was allowed to testify, over the defendant's objections as to relevancy, regarding the defendant's attitude toward Justin after he regained consciousness. When it appeared that Justin would be retarded for the rest of his life, the defendant told Carrie that she would have to choose between him and Justin.

The State argues that this evidence is relevant to the issue of the defendant's intent in this case.

> "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1989). Neb. Evid. R. 402 permits the admission of relevant evidence only. *State v. Robertson*, 219 Neb. 782, 366 N.W.2d 429 (1985). To be relevant, evidence must be rationally related to an issue by a likelihood, not a mere possibility, of proving or disproving an issue to be decided. *State v. Baltimore*, 236 Neb. 736, 463 N.W.2d 808 (1990); *State v. Robertson, supra.*
>
> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1989). . . . In the context of Neb. Evid. R. 403, "unfair prejudice" means an undue tendency to suggest a decision on an improper basis.

*State v. Lonnecker*, 237 Neb. 207, 210-11, 465 N.W.2d 737, 740-41 (1991).

Whatever probative value this part of Carrie's testimony might have to the issue of the defendant's intent, the value is minimal when compared to the unfair prejudice the testimony caused the defendant. Given the facts and the issue involved in this case, evidence of the defendant's attitude following Justin's regaining consciousness would have an undue tendency to influence the jury's decision on an improper basis, and the trial court erred in admitting the testimony into evidence over the defendant's objections.

Carrie was also allowed to testify, over the defendant's objection, about an incident that occurred at the hospital while she and her family were waiting for Justin to go into surgery. The defendant wanted Carrie to go with him to get something to eat; however, she did not want to leave Justin's room until he went into surgery. Carrie's mother suggested that the defendant get something to eat without Carrie, and the defendant became angry.

Carrie further testified:

A. . . . And I told him to get out, I said, "Just get out," and he said, "No, you tell them to leave, because this is our child and they have nothing to do with this." And I said, "I want you to leave." So Jim stood up, my stepfather, and was asking Tony, he said, "Come on, let's go outside," you know. Tony got very upset and he raised his fist to Jim.

Q. Who did?

A. Tony.

Q. Did he say anything at that time?

A. He said, "Come on, old man, I'll lay you out right here," or something like that.

The State suggests that the evidence was properly admitted because it was evidence of the defendant's intent and quick temper. There is no merit to that argument.

The evidence as to the defendant's angry outburst at the hospital was irrelevant and prejudicial, and it was error to receive it in evidence.

Error in admitting or excluding evidence in a criminal trial is prejudicial unless it can be proved that the error was harmless beyond a reasonable doubt. *State v. Baltimore*, 236 Neb. 736, 463 N.W.2d 808 (1990); *State v. Lenz*, 227 Neb. 692, 419

N.W.2d 670 (1988). Harmless error exists in a jury trial of a criminal case when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in a verdict adverse to a substantial right of the defendant. *State v. Christian*, 237 Neb. 294, 465 N.W.2d 756 (1991).

In this case, we are unable to say that the admission of the improper evidence was harmless beyond a reasonable doubt.

The judgment is reversed, and the cause is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

GRANT and FAHRNBRUCH, JJ., concur.

HASTINGS, C.J., concurring.

I concur in the result because I believe that the testimony of the wife regarding the threat made by the defendant to her stepfather was received erroneously, was prejudicial, and does require a new trial. However, in my opinion, evidence of the statement of the defendant that his wife would have to choose between him and the baby was probative of defendant's intent to cause bodily harm intentionally and knowingly.

BOSLAUGH, J., dissenting.

I dissent only from that part of the opinion which holds that it was error for the trial court to admit, over defendant's objections, the testimony of the defendant's wife, Carrie, concerning his statement that she would have to choose between the defendant and their son, Justin, and the conversation at the hospital while they were waiting for Justin to be taken into surgery.

The defendant was charged with assault in the first degree, which required the State to prove beyond a reasonable doubt that the defendant's assault upon Justin, which clearly caused serious bodily injury, was made "intentionally or knowingly." Neb. Rev. Stat. § 28-308 (Reissue 1989).

There is substantial evidence in this case from which the jury could infer that Justin was an unwanted child so far as the defendant was concerned. The defendant made a number of statements which were inculpatory in varying degrees, but he finally admitted that he had shaken Justin vigorously when,

according to the defendant, Justin appeared to be comatose. The evidence established that the injury had to have occurred before that time.

It may be conceded that the testimony in question was prejudicial to the defendant, as most incriminating evidence is. However, I do not agree that it was not relevant or unfairly prejudicial.

The evidence as a whole tended to prove that the defendant deliberately and intentionally shook Justin violently in an effort to stop his crying. Defendant succeeded not only in stopping the crying, but also in so permanently injuring Justin that he will be retarded for the rest of his life.

In my opinion, the testimony in question was relevant to the issue of the intent with which the act was done, and it was within the discretion of the trial court to overrule the defendant's objections to it. I would affirm the judgment.

WHITE, J., joins in this dissent.