STATE OF NEBRASKA, APPELLEE, V.
DAVID WOODWARD, APPELLANT.

316 N.W.2d 759

Filed March 5, 1982.   No. 44405.

John P. Murphy, Lincoln County Public Defender, for appellant.

Paul L. Douglas, Attorney General, and Mark D. Starr for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

KRIVOSHA, C.J.

The appellant, David Woodward (Woodward), appeals from a jury verdict finding him guilty of the crime of burglary. He maintains that he should have been granted a new trial because he alleges that some members of the jury viewed the premises where the burglary occurred, contrary to the trial court's admonition. Woodward also maintains that the trial court erred in not permitting him to post a cash bond equal to 10 percent of the bail bond fixed by the trial court instead of the full amount of the bond during the time of appeal. We believe that the action of the trial court in both overruling the motion for new trial and in fixing the amount of the bail bond during the appeal was, in all respects, correct and the judgment and conviction is affirmed.

Woodward was charged with burglarizing a Phillips 66 service station located at 210 South Jeffers Street in North Platte, Nebraska. The station is located on the southeast corner of B and Jeffers Streets in North Platte. Robert Richardson was called by the State and testified he observed an individual leaving the Kwik Stop, which is located on the northwest corner of B and

Jeffers Streets in North Platte, at approximately 4 a.m. The individual was observed by Richardson walking toward the area of the Phillips 66 service station. Richardson was at the Kwik Stop for the purpose of delivering bread.

Richardson further testified that while in his delivery truck he heard a loud noise. He looked out the back of the truck and saw an individual kicking out a glass door at the Phillips 66 service station. He recognized the person as being the one he had seen walking out of the Kwik Stop toward the gas station just as he arrived to make the delivery. He had, on three or four previous occasions, seen the same individual walking on the streets of North Platte in the early morning hours. Richardson observed the individual enter the service station, at which point he had the Kwik Stop store clerk call the police. He identified Woodward as the individual who was at the station.

Police Officer Becky Hinton also testified that she arrived on the scene, saw the person behind the gas station, and gave chase, eventually losing track of him. Another officer determined that the distance between the Kwik Stop and the Phillips 66 service station was approximately 300 feet, though Richardson testified he thought it was only 150 feet.

At the noon recess during the trial, the presiding judge admonished the jurors not to talk to anyone about the case nor to inform themselves about the case, nor to perform any sort of investigation with reference to the case. He particularly told them not to take a look at the Phillips 66 service station. Photographs of the station were introduced in evidence.

Following the completion of the trial and after the jury began deliberation, they left the courthouse for dinner in a three-car caravan, including one car driven by the bailiff in whose charge they were. The restaurant to which they were taken was located south of the court-house and the most direct route to the restaurant was by traveling down Jeffers Street, a one-way street in

North Platte. The jurors passed the intersection of B and Jeffers Streets as they proceeded to the restaurant, though they did not stop. When they returned to the courthouse, they took the corresponding one-way street, Dewey Street, back to the courthouse and did not pass the intersection in question. Following their deliberation, they returned a verdict finding Woodward guilty of the burglary.

At the hearing on the motion for new trial, two of the jurors were called by Woodward to testify. Both testified that no stop was made at the scene, nor was any investigation at the scene conducted. One of the jurors who testified could not recall any comment being made about the intersection. The other juror did recall that some comment was made about the intersection, but could not recall specifically what the comment was. Both jurors, however, testified that they were lifelong residents of North Platte and familiar with the intersection, having crossed it many, many times.

Woodward now urges us to adopt either a "per se rule" which would hold that an unauthorized view of the scene of the crime constitutes automatic grounds for a new trial, regardless of whether there is a showing that such a view was prejudicial, or at least a "rebuttable presumption" rule to the effect that once it is shown that the jury or some member had an unauthorized view of the scene of the crime, a rebuttable presumption should arise, with the burden on the State to show beyond a reasonable doubt that the conduct of the juror was harmless. We believe that neither rule is required or proper in a case of this nature. We have already declared that in order for jury misconduct to be the basis of a new trial, the misconduct must be prejudicial to the defendant. *State v. Isley*, 195 Neb. 539, 239 N.W.2d 262 (1976). We have further held that a motion for new trial for alleged juror misconduct is addressed to the sound discretion of the trial court, and a ruling made thereon will not be disturbed on appeal unless an abuse of discretion is shown. *State v. Robbins*, 207 Neb.

439, 299 N.W.2d 437 (1980).

More specifically, in *Phillips v. State*, 157 Neb. 419, 424, 59 N.W.2d 598, 601 (1953), we said: "Misconduct of a juror sufficient to vitiate a verdict must be shown to have influenced the jury in arriving at a verdict, and it must relate to a matter in dispute. Carpenter v. Sun Indemnity Co., 138 Neb. 552, 293 N.W. 400. The rule, concisely stated, is: It is not proper for a juror to inspect the place where the alleged crime occurred without the authorization of the court. Such an unauthorized inspection, however, will not vitiate the verdict where it is not shown to have affected the result of the verdict. Where the trial court has determined that an unauthorized inspection of the premises was not prejudicial to the rights of the defendant, its finding will not ordinarily be disturbed by the appellate court in the absence of an abuse of discretion on the part of the trial court."

Woodward acknowledges our rule in the *Phillips* case but maintains that our decision in *State v. Steinmark*, 201 Neb. 200, 266 N.W.2d 751 (1978), requires us to change that rule and place a burden upon the State because of the defendant's inability to inquire of the jury what transpired. Our reading of the *Steinmark* case does not support that contention. What we said in *Steinmark* at 204, 266 N.W.2d at 753-54, following the requirements of Neb. Rev. Stat. § 27-606(2) (Reissue 1979), was: "'(2) Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. . . .*'

"Under this statute a juror may testify as to whether 'extraneous prejudicial information was improperly brought to the jury's attention.'" (Emphasis supplied.)

While it is true that one may not inquire as to whether the presence of the evidence affected the juror's mind, it is proper and necessary that evidence be presented by the objecting party to show that *extraneous prejudicial information* was improperly brought to the jury's attention. In this case, that burden, required to be carried by Woodward, was not met. All that Woodward produced was the evidence of two jurors that they had traveled by an intersection where the store in which the crime was committed was located and that some comment *may* have been made by one of the jurors concerning *what could or could not be seen*. The record does not, however, establish whether what was said was that Woodward could be seen by Richardson or that it was to the effect that Woodward could not be seen by Richardson. For all we know from the record, the comment made by one of the jurors may not only have been nonprejudicial to Woodward but, in fact, may have been beneficial. While obviously it would be better if jurors did not even pass the general area where a crime has been committed, it cannot be said that the mere passage through an intersection results in submitting to the jury *extraneous prejudicial information*. To hold otherwise would be to totally ignore the facts with regard to a host of communities in Nebraska where the jurors are intimately familiar with every aspect of the area and may not be able to even approach the courthouse without passing the area. Merely showing that jurors, when together and at the direction of the bailiff, passed the intersection in which a crime was committed, with nothing more, was insufficient to establish that the rights of the accused have been prejudicially affected or that he has in some manner been denied a fair trial. This is not similar to the situation where the evidence discloses that unauthorized and improper communications have been had with the jury. In such a

case, a rebuttable presumption does exist. See *Simants v. State*, 202 Neb. 828, 277 N.W.2d 217 (1979). There is, however, no evidence in this case of any improper communication with the jury. As we have already noted, there is not any evidence of any prejudicial evidence getting to the jury. We therefore believe that Woodward's contention that he was entitled to a new trial merely upon the showing made in this case was without support and the trial court's denial of a new trial on that basis was correct.

Following the court's overruling of Woodward's motion for new trial, a notice of appeal was filed with this court and the execution of the judgment was suspended. As is the practice, the District Court was advised by the Supreme Court that upon application and notice, the District Court *could* admit Woodward to bail in a sum and with sureties to be fixed and approved as conditioned by the District Court. The trial court, upon receiving such application from Woodward, fixed the amount of the bond in the amount of $5,000, cash or surety, and refused to permit Woodward to post the 10 percent bond referred to in Neb. Rev. Stat. § 29-901 (Reissue 1979). Woodward maintains that the trial court was in error in that regard and was required to permit him to post an appearance bond in cash in a sum not to exceed 10 percent of the amount of the bond. We believe that Woodward misreads the provisions of § 29-901 as they apply to appeals. The statute specifically provides in part: "Any bailable defendant shall be ordered released from custody *pending judgment*, on his personal recognizance, unless the judge determines in the exercise of his discretion that such a release will not reasonably assure the appearance of the defendant as required." (Emphasis supplied.) The provisions of § 29-901 apply only until the judgment has been rendered and not after. What we suspended by our order in this case following the appeal was the execution of the judgment. We did not, however, suspend the judgment. See *State ex rel. Hunter v. Jurgensen*, 135 Neb. 136, 280

N.W. 886 (1938). The provisions for bail after conviction are not governed by § 29-901 but, rather, by Neb. Rev. Stat. § 29-2303 (Reissue 1979). While the provisions of § 29-901 applicable to cases before judgment are mandatory except as to those specifically exempted by the provisions of Neb. Const. art. I, § 9, the provisions of § 29-2303 are purely discretionary. Section 29-2303 specifically provides in part: "Whenever a person shall be convicted of a felony, and the judgment shall be suspended as aforesaid, it shall be the duty of the court to order the person so convicted into the custody of the sheriff, to be imprisoned until the case in error be disposed of, or such person admitted to bail." It is clear from a reading of the above-quoted section that the right to bail, after conviction, is discretionary and not absolute. Once a defendant has been convicted of the felony charged, he is not entitled to be released on bail. Such determination is left to the discretion of the trial court who may prescribe the amount of the bond and the conditions thereof, including a requirement that the full amount of the bond be posted. See § 29-2303.

The action of the trial court is, in all respects, correct and the conviction and sentence are affirmed.

AFFIRMED.