STATE OF NEBRASKA, APPELLEE, V. ALLEN E.
GINGRICH, APPELLANT.
320 N.W.2d 445

Filed June 4, 1982. No. 81-811.

Curtis A. Sikyta, for appellant.

Paul L. Douglas, Attorney General, and Shandler D. Cronk, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

CLINTON, J.

The defendant Gingrich was convicted of burglary by a jury in the District Court for Sherman County, Nebraska, and sentenced to a term of 1 year in the

Nebraska Penal and Correctional Complex with credit being given for 42 days' jail time.

The defendant appeals to this court and makes 15 assignments of error. Those which will require discussion are the following: (1) The defendant was denied a speedy trial as required by Neb. Rev. Stat. §§ 29-1207 and 29-1208 (Reissue 1979) and by the pertinent provisions of the Constitutions of the State of Nebraska and the United States. (2) The evidence was insufficient to support the verdict. (3) The court erred in failing to suppress evidence seized in the search of a motor vehicle. (4) The court erred in not suppressing identification testimony of eyewitnesses.

The first assignment makes necessary an outline of procedural events. Some of the dates which follow cannot be determined from the transcript and are taken from recitals by counsel for the defendant during hearings before the District Court and which appear to have been accepted by both the State and the district judge as accurate. A complaint charging the defendant with the crime of robbery was filed in the county court of Sherman County on August 25, 1980. The defendant had been arrested on August 23, 2 days earlier and within a few hours of the commission of the crime. On September 24 the defendant waived preliminary hearing on the robbery charge and was released on bond. On January 14, 1981, the information charging robbery was filed in the District Court. On February 6, 1981, a plea bargain was presented to the court and refused. There is no evidence in the record indicating the nature of the plea bargain, by whom it was initiated, or the time consumed in arriving at the proposed bargain. On February 25 an information charging burglary was filed in the District Court. This charge apparently was based on the same transaction as the charge of robbery. On February 27 the defendant filed a motion to dismiss for failure to grant a

speedy trial. A hearing on that motion was held on the same day, and the motion was overruled. No evidence was introduced. At that time the defendant demanded a preliminary hearing on that charge, and the District Court sent the matter back to the county court for a preliminary hearing. On March 12, 1981, the defendant was bound over to the District Court on the burglary charge. The arraignment on the burglary charge was held on March 13, 1981, and the defendant entered a plea of not guilty. The county attorney announced his election to go to trial on the charge of burglary, and trial date was set for June 29. Ten days previous to June 29, the defendant filed a motion to dismiss for failure to grant a speedy trial as required by § 29-1208 and the constitutional provisions, and a motion to suppress. After hearing on that motion and the motion to suppress was held on June 29, they were overruled.

The defendant argues that the period between the time of filing the complaint in the county court on August 25, 1980, and the trial beginning June 29, 1981, constituted an unreasonable delay and a deprivation of the right to a speedy trial under both constitutional and statutory requirements. He further argues that in applying the statute, the period between the filing of the complaint and the filing of the information should be included.

Section 29-1207 provides that any person indicted or informed against shall be brought to trial within 6 months. The time begins to run from the date of indictment or filing of the information, excluding such periods as are specified in the statute. Section 29-1208 provides that if the defendant is not brought to trial before the running of the time for trial, as extended by the excluded periods, then the defendant is entitled to an absolute discharge.

Apparently 3 months and 20 days elapsed between the date the defendant was released on bond after waiving preliminary hearing and the time of the fil-

ing of the information on the robbery charge. Neither the defendant nor the State introduced any evidence explaining this delay.

The defendant's right to a speedy trial as specified by § 29-1207 begins when he is indicted or is informed against. *State v. Costello,* 199 Neb. 43, 256 N.W.2d 97 (1977); *State v. Spidell,* 192 Neb. 42, 218 N.W.2d 431 (1974); *State v. Born,* 190 Neb. 767, 212 N.W.2d 581 (1973).

In *Costello, supra,* we said: "The constitutional right to a speedy trial and the statutory implementation of that right under section 29-1207, R.R.S. 1943 . . . exist independently of each other. . . . Any unreasonable delay occurring prior to the filing of an information will be considered, in conjunction with statutory requirements, in determining whether or not a defendant has been denied the constitutional right to a speedy trial." 199 Neb. at 49, 256 N.W.2d at 102. See, also, *State v. Born, supra.* Accordingly, we must examine the record to determine whether the defendant's constitutional right to a speedy trial was violated.

*Barker v. Wingo,* 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), is the leading case on the constitutional right to a speedy trial. There the U.S. Supreme Court said that a defendant's constitutional right to a speedy trial cannot be established by any inflexible rule, but can be determined only on an ad hoc balancing basis in which the conduct of the prosecution and that of the defendant are weighed. The Court said that an assessment should be made of such factors as the length of and the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. In that case more than 5 years elapsed between the time of the arrest and the trial. The prosecution obtained numerous delays related to the trial of an accomplice because it wanted to secure a conviction of the accomplice so that his testimony might be used against the defendant. The

Court noted that there was no serious prejudice to the defendant because of the delay, that he had not pressed for a speedy trial, and concluded that he had not been deprived of his due process right to a speedy trial.

The record in the case at bar shows no prejudice whatever to the defendant as a consequence of the delay in the filing of the information, nor as a result of the less than 6 months which elapsed between the filing of the information and trial. The defendant was free on bond from the time of the waiver of preliminary hearing on the robbery charge until the time of trial. He did not press for trial until February 27. According to his own counsel, some plea negotiations were taking place after the filing of the information and before February 27. It does not appear that the delay caused any loss of evidence or that preparation for trial was hindered. On March 13, immediately after the preliminary hearing on the burglary charge, the information was filed and the trial was set for June 29. We hold that under the circumstances, giving due consideration to the speedy trial policy established by §§ 29-1207 and 29-1208, the defendant was not deprived of his constitutional right to a speedy trial.

There is no merit to the defendant's claim that the evidence was insufficient to support the verdict. The evidence, if believed by the jury, would permit it to find that the defendant Gingrich and a companion, at about 11:45 p.m. on August 22, 1980, broke the lock on the door of the enclosed porch of the residence where John Pokorsky lived with his parents in Loup City, Nebraska. At the time, defendant and his companion were armed with a tire iron and a club (described in some of the testimony as a tire checker). The two men entered the porch, proceeded to the front door, and awakened Pokorsky by pounding on the door. The latter went to the door and observed the two men through the window of the

door. He opened the door slightly, and the pair "shoved" their way into the house. Each still carried the weapons described. They pushed Pokorsky into his bedroom and demanded his money. He took $90 from his billfold and gave it to them. At that time the telephone rang. It rang four or five times and then Pokorsky answered it after being told by one of the men to be careful what he said. The party calling was a neighbor, Dewey Polen. He asked Pokorsky if there was trouble. Pokorsky gave an equivocal answer, and Polen's response indicated, according to Pokorsky, that Polen had gotten the "drift." At the time Polen made the call to Pokorsky, he had just returned to his own home, which was located directly across the street from the Pokorsky residence; he had been at the home of a friend, Mark Eurek, who was celebrating his birthday. Polen had been called by his daughter who had made observations which alarmed her and caused her to believe that something unusual was going on at the Pokorsky residence. When Polen received the call from his daughter, he and Eurek got into a car and drove past the Pokorsky residence. They observed a two-tone pickup truck parked adjacent to the residence. It bore license plates county 62 and the first two of the other four digits were 10. They could not make out whether the license was commercial or farm. Polen and Eurek then went into the Polen home. Polen made the call to Pokorsky earlier referred to and then called the police. Eurek, who was observing through a window, announced that the pickup was leaving. Polen ran into the front yard, saw the pickup being driven away, and observed the person at the wheel. Eurek had seen two men come from the direction of the Pokorsky house and get into the vehicle. One was bearded, and he judged from their motions and build that both were male.

Shortly thereafter the police arrived. Pokorsky

gave the police a description of the men. Polen and Eurek gave a description of the motor vehicle and the license plate. A general search of the area around Loup City resulted in the arrest of the defendant and his companion in a pickup meeting the description of that seen at the Pokorsky house and bearing license plates as described by Polen and Eurek. Pokorsky identified the defendant at trial as one of the participants in the crime. In the pickup, a tire iron and a club meeting the description of the weapon carried by one of the men were found. Also found were rubber gloves of the type Pokorsky had described as being worn by the men when they entered the home. The evidence was clearly sufficient to support either the charge of burglary or robbery.

The motor vehicle was searched pursuant to a warrant. As a consequence, the tire iron, the club, and the gloves similar to those described by Pokorsky were found in the truck. These items were described in the warrant. An examination of the affidavit clearly shows that it stated probable cause for the issuance of the warrant. An affidavit for search warrant is sufficient to meet the standards of the fourth amendment to the Constitution of the United States if it complies with the ruling in *United States v. Harris,* 403 U.S. 573, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971). The court did not err in refusing to suppress the evidence.

Pokorsky identified the two participants at a showup in the sheriff's office immediately after the arrest. The court did not permit this identification testimony to be received by the jury, but permitted Pokorsky at trial to testify to the identity of the defendant as one of the persons who had entered his home. It is clear that Pokorsky had an ample independent opportunity to observe the defendant at the time the crime was committed and make the identification wholly independent of the showup, even if we assume there was something suggestive in the

showup. Whether an identification procedure is violative of due process will be determined upon a consideration of the totality of the circumstances surrounding it. *State v. Banks,* 195 Neb. 340, 237 N.W.2d 875 (1976). The trial court did not err in permitting Pokorsky to testify as to the identity of the defendant.

The remaining assignments of error are wholly frivolous or do not find support in the evidence. Among the errors assigned are improprieties in the jury panel and misconduct of counsel. No evidence to support the alleged errors is in the record. The inclusion of evidence in the bill of exceptions is the only vehicle for bringing evidence before this court on appeal. Evidence not included in the bill of exceptions may not be considered. *Dilsaver v. Pollard,* 191 Neb. 241, 214 N.W.2d 478 (1974).

Affirmed.