STATE OF NEBRASKA, APPELLEE, V. ROBERT E.C. TRAMMELL,
APPELLANT.
484 N.W.2d 263

Filed May 22, 1992.    No. S-90-1040.

Dennis R. Keefe, Lancaster County Public Defender, and Richard L. Goos for appellant.

Don Stenberg, Attorney General, and Delores Coe-Barbee for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

The defendant, Robert E.C. Trammell, was convicted of aiding the consummation of a felony, in violation of Neb. Rev. Stat. § 28-205 (Reissue 1989). He was also found to be a habitual criminal, as defined in Neb. Rev. Stat. § 29-2221 (Reissue 1989), and was sentenced to imprisonment for 10 years. Trammell has appealed, and his assignments of error, when summarized, allege that (1) he was denied a speedy trial, (2) his motion to suppress should have been sustained, (3) witnesses for the State should not have been allowed to testify concerning evidence that had been destroyed by the police, (4) the State was guilty of prosecutorial vindictiveness, and (5) he should have been granted a new trial because of the misconduct of a juror. We reverse and remand for a new trial.

The record shows that during the early morning hours of November 5, 1986, the Star City Eagles Club in Lincoln, Nebraska, was burglarized, and beer and bottles of liquor were taken from the premises. While Lincoln police investigated the burglary, officers received information which led them to contact Trammell's wife, Veronica Trammell. On November 17, 1986, the wife consented to a search of the residence she shares with Trammell, where beer taken during the burglary was discovered.

The police later learned that additional property stolen during the burglary might be at Trammell's residence. On November 30, 1986, again with the wife's permission, a second search of the Trammell residence was conducted, and 29 bottles of liquor stolen during the burglary were found and seized. At the time of the searches Trammell was being held on sexual assault charges. See *State v. Trammell*, 231 Neb. 137, 435 N.W.2d 197 (1989).

On December 1, 1986, Trammell gave Sgt. Larry Nelson a tape-recorded confession of his involvement in the burglary, portions of which Nelson read at trial.

Prior to trial, Trammell filed a "Motion for Discharge of Defendant," alleging that he had been denied his right to a speedy trial. He also moved to suppress his confession. Both of these motions were overruled.

In his first summarized assignment of error, Trammell alleges that he was denied his right to a speedy trial under Neb. Rev. Stat. § 29-1207 (Reissue 1989) and the Sixth Amendment to the U.S. Constitution.

A complaint against Trammell was initially filed on September 10, 1987, and an information was filed on November 3, 1987. Then, on February 2, 1988, the information was dismissed "because [Trammell] was convicted of First Degree Sexual Assault and Habitual Criminal sufficient for sentencing purposes . . . ." However, on February 10, 1989, the sexual assault judgment was reversed and that cause remanded for further proceedings. See *State v. Trammell, supra*. On June 21, 1989, the information in the sexual assault case was dismissed.

On June 15, 1989, a second complaint was filed in this case. A second preliminary hearing was held, at which no witnesses were called, but the transcript of the initial October 27, 1987, preliminary hearing, along with other documentary evidence, was introduced. On November 20, 1989, an information was filed which again charged Trammell with aiding the consummation of a felony and with being a habitual criminal.

Section 29-1207 states in part:

(1) Every person indicted or informed against for any offense shall be brought to trial within six months, and such time shall be computed as provided in this section.

(2) Such six-month period shall commence to run from the date the indictment is returned or the information filed. . . .

. . . .

(4) The following periods shall be excluded in computing the time for trial:

(a) . . . the time from filing until final disposition of pretrial motions of the defendant . . . .

In a similar case, this court held recently that while the time chargeable against the State under the speedy trial act

commences with the filing of an initial information against a defendant, the time chargeable to the State ceases, or is tolled, during the interval between the dismissal of the initial information and the refiling of an information charging a defendant with the same crime alleged in the previous, but dismissed, information. *State v. Sumstine*, 239 Neb. 707, 478 N.W.2d 240 (1991). See, also, *State v. Batiste*, 231 Neb. 481, 437 N.W.2d 125 (1989). Consequently, when the State dismisses an information and refiles another information charging the defendant with the same offense alleged in the previous information, the periods during which the informations are pending for the same offense must be combined in determining the last day for commencement of trial under Nebraska's speedy trial statutes, subject to the time excluded pursuant to § 29-1207(4).

Thus, in determining whether Trammell was brought to trial within the 6-month period prescribed by § 29-1207, we must consider both the time elapsed from the filing of the original information on November 3, 1987, until the February 2, 1988, dismissal, and the time from the refiling of the information on November 20, 1989, until commencement of the trial on September 18, 1990. When these two time periods are combined and the time from filing until final disposition of Trammell's pretrial motions is excluded, the record shows that Trammell was brought to trial within the 6-month period required by § 29-1207.

Although Trammell contends that the interval between the filing of the second complaint and the filing of the second information should be included in determining whether he was tried within 6 months, it is well established that the 6-month period commences to run from the date the information is filed and not from the time the complaint is filed. *State v. Gingrich*, 211 Neb. 786, 320 N.W.2d 445 (1982); *State v. Born*, 190 Neb. 767, 212 N.W.2d 581 (1973). See, also, *State v. Sumstine, supra*; *State v. Batiste, supra*.

Trammell also claims that he was denied his right to a speedy trial as guaranteed by the Sixth Amendment to the U.S. Constitution. As we stated in *State v. Andersen*, 232 Neb. 187, 195-96, 440 N.W.2d 203, 211 (1989):

> The constitutional right to a speedy trial and the statutory implementation of that right under § 29-1207 exist independently of each other. Determining whether a defendant's constitutional right to a speedy trial has been violated requires a balancing test in which courts must approach each case on an ad hoc basis. This balancing test involves four factors: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. None of these four factors standing alone is a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, the factors are related and must be considered together with such other circumstances as may be relevant. . . .

See, also, *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

   *U.S. v. Meyer*, 906 F.2d 1247 (8th Cir. 1990), is similar to this case. In *Meyer*, the defendant was convicted of making, and aiding and abetting the making of, false statements in a passport application. In answering Meyer's Sixth Amendment claim, the Eighth Circuit Court stated:

> Meyer's sixth amendment claim is based on the three-year delay between the date of the offense and the date of the trial. Her claim is without merit because it ignores the intervening dismissal of the first indictment. The original indictment was dismissed without prejudice only two months after it was returned. She was not reindicted until nearly three years later. This three-year period between the dismissal of that indictment and Meyer's reindictment for the same offense does not implicate her sixth amendment right to a speedy trial because that guaranty is not operative after charges have been formally dismissed. See *United States v. MacDonald*, 456 U.S. 1, 9-10, 102 S. Ct. 1497, 1502-03, 71 L. Ed. 2d 696 (1982) . . . . Such a delay implicates only the due process clause.

*U.S. v. Meyer*, 906 F.2d at 1251. See, also, *United States v. Hicks*, 798 F.2d 446 (11th Cir. 1986), *cert. denied* 479 U.S. 1035, 107 S. Ct. 886, 93 L. Ed. 2d 839 (1987) (once the government, acting in good faith, formally drops the charges, the speedy

trial guarantee of the Sixth Amendment is no longer effective, and any delay following dismissal must be scrutinized under due process standards).

*Meyer* also notes that it is " 'an unusual case' " in which the Sixth Amendment has been violated when the time limits under the Speedy Trial Act, 18 U.S.C. § 3161 et seq. (1988), have been met. *U.S. v. Meyer*, 906 F.2d at 1251.

Thus, *Meyer* holds that the period between dismissal of a defendant's first indictment and reindictment for the same offense does not implicate the right to a speedy trial, but, rather, the delay only implicates the due process clause (i.e., the 5th Amendment to the U.S. Constitution as made applicable to the states by the 14th Amendment). Despite this rule, Trammell claims that the entire period between his December 1, 1986, confession and his September 18, 1990, trial establishes that he was denied his right to a speedy trial. But under the rule discussed in *Meyer*, we need not consider the period during which Trammell was not charged in determining whether he was granted a speedy trial. With that in mind, when all the factors set forth in *State v. Andersen, supra*, and *Barker v. Wingo, supra*, are considered in conjunction with the record before us, it is clear that Trammell was not denied his constitutional right to a speedy trial.

Furthermore, while Trammell does not claim that he was denied due process, we note that such a claim would be meritless. Although statutes of limitations are the primary safeguard against prejudicial preaccusation delay, Trammell could establish a due process violation based upon preaccusation delay by showing that it resulted in actual prejudice and was intentional and improperly motivated. *U.S. v. Meyer, supra*. In other words, the due process clause requires dismissal if a defendant can show that preindictment delay caused actual prejudice to his or her defense and was a deliberate action by the State designed to gain a tactical advantage. *United States v. Robinson*, 767 F.2d 765 (11th Cir. 1985).

The reason for the State's delay in prosecuting this case is apparent from the record. After initially charging Trammell, the State chose to dismiss the charges because he had been

convicted of a sexual assault and sentenced as a habitual criminal; the State thus deemed it unnecessary to prosecute him on additional charges. After the judgment in the sexual assault conviction was reversed, the State found it more prudent to prosecute Trammell in this case rather than retry the sexual assault case. The State neither received nor attempted to attain any advantage by delaying the prosecution of Trammell in this case.

While Trammell contends that he was prejudiced by a lapse of memory on the part of some of the witnesses, the only potentially important memory lapses at the time of trial related to the circumstances surrounding his confession and therefore concerned the admissibility of that confession. However, when viewed within the context of the entire record, those memory lapses were not consequential, and, as discussed below in connection with Trammell's second summarized assignment of error, the confession was admissible at the trial.

Therefore, we conclude that Trammell's conviction in this case did not violate his right to a speedy trial or due process.

Trammell's second summarized assignment of error asserts that the trial court erred in failing to sustain his motion to suppress his statement to the police in which he confessed his involvement in the burglary.

The record shows that at the time Trammell confessed to Nelson, he was being held on sexual assault charges. Prior to trial in this case, the trial court conducted a hearing on Trammell's motion to suppress his confession. At that hearing the trial court received into evidence a transcript of a similar hearing in Trammell's sexual assault case in which the admissibility of Trammell's confession was at issue because the State sought to use the confession to impeach Trammell's testimony in that case. The transcript of the hearing in the sexual assault case includes the following testimony by Nelson:

> Q. . . . Well, is it not true, Officer, that you told the defendant prior to the recording of the incident that you were interested in two things, one, getting the property back, which you had yet to be recovered, and second, that you were interested more in John Richard [sometimes referred to in the record as Richards], one of the

participants in the burglary, and getting charges against him or evidence?

A. And clearing this case, that's correct.

Q. And did you not indicate to Mr. Trammell that no charges would be filed against him as a result of any connection he might have with the Star City Eagles burglary?

A. I wasn't in a position to guarantee that.

Q. You did indicate that to him though, didn't you?

A. No. I can't promise that.

Q. Well, you talked about it though, didn't you?

A. I told him I'd check into it, if we could work that kind of an arrangement.

Both at the suppression hearing and at the trial in this case, Nelson also testified that he made no direct or indirect promises to Trammell that a confession would result in a benefit or advantage to him. Officer Larry Murray, who was also present when Trammell gave his confession, testified that, so far as he was aware, Trammell was not offered any promises in exchange for his confession.

In addition to the transcript of Trammell's statement to the police, the record contains the standard written *Miranda* warning which Trammell signed. The transcript of Trammell's statement to the police begins with Nelson reviewing each portion of the *Miranda* warning with Trammell, including a statement that "[a]nything you may say can be and will be used against you in a court of law . . . ." When Nelson asked if Trammell understood that statement, Trammell answered, "Yes."

Contrarily, the transcript from Trammell's sexual assault case, which was received in evidence in this case, contains Trammell's testimony that he provided a statement to prevent police from "harassing" his wife and that Nelson promised Trammell that he "would not be prosecuted for anything [he] might have got cornered off in" if he would "give" the police Richard. In his brief, Trammell also points out that although Richard and another accomplice in the burglary were charged in December 1986, no complaint was filed against Trammell until September 10, 1987. According to Trammell, this delay

was a result of the promise of nonprosecution.

After overruling Trammell's motion to suppress his statement to the police, the trial court, over Trammell's objection, admitted that evidence at trial.

In *State v. Haynie*, 239 Neb. 478, 476 N.W.2d 905 (1991), this court reviewed the standards which are applicable in determining the admissibility of a defendant's confession. A statement of a suspect, to be admissible, must be shown by the State to have been given freely and voluntarily and not to have been the product of any promise or inducement—direct, indirect, or implied—no matter how slight. However, this rule is not to be applied on a strict per se basis. Rather, determinations of voluntariness are based upon an assessment of all the circumstances and factors surrounding the situation when the statement was made. *Id*.

Whether a defendant's statements resulted from an officer's promise is a question of fact. In determining whether the findings made by the trial court in that regard are clearly wrong, an appellate court takes into consideration that the trial court observed the witnesses who testified at the hearing. *Id*.

The voluntariness of an admission or confession is determined from a consideration of all the circumstances, and a determination by the trial court that a confession was made voluntarily will not be overturned on appeal unless clearly wrong. *Id*.

In this case there is a conflict between Trammell's testimony and that of the officers who took his confession. Based upon the record in this case and the criteria set forth in *State v. Haynie, supra*, we cannot say that the district court was clearly wrong in determining that Trammell voluntarily confessed his involvement in the burglary.

Trammell also argues that his confession is not admissible because it was obtained while he was in custody and represented by counsel in his sexual assault case. However, the fact that a defendant is held in custody on charges for which he has appointed counsel does not by itself automatically bar the admissibility of police-initiated custodial interrogation of the defendant regarding unrelated matters for which the defendant has not yet been charged. See *McNeil v. Wisconsin*, ____ U.S.

____, 111 S. Ct. 2204, 115 L. Ed. 2d 158 (1991) (an accused's assertion of his Sixth Amendment right to counsel cannot imply an assertion of the *Miranda* Fifth Amendment right). See, also, *U.S. v. Cooper*, 949 F.2d 737 (5th Cir. 1991).

Thus, the trial court did not err in refusing to suppress Trammell's confession.

Trammell's third summarized assignment of error avers that the district court erred in overruling his motion regarding physical evidence which was "destroyed" by the police. With respect to this contention, the record shows that prior to the filing of the complaint against Trammell, the police did not preserve the beer and liquor which had been seized at Trammell's residence, but instead returned the property to the Star City Eagles Club. Trammell contends that he was denied due process because this physical evidence was not available for his use in preparing his defense.

The police may very well have acted improperly in returning the beer and liquor to the Star City Eagles Club prior to the trial. See Neb. Rev. Stat. § 29-818 (Reissue 1989). However, Trammell does not even suggest how, given the testimonial evidence presented at the trial, an inspection of the beer and liquor would have aided his defense; he merely complains that the property was not preserved. Furthermore, there is nothing in the record to suggest that the police acted in bad faith when they returned the beer and liquor to the Star City Eagles Club. As the U.S. Supreme Court stated in *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988):

> We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i. e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

In his fourth summarized assignment of error, Trammell

claims that the district court erred in failing to sustain his claims regarding prosecutorial vindictiveness. At the conclusion of the State's case in chief, Trammell renewed his motion for discharge, arguing in part that the prosecution was the product of vindictiveness on the part of the county attorney. Trammell asserts that he was prosecuted in this case only because he was successful in his appeal in the sexual assault case, and, therefore, his conviction is improper and a violation of due process. See, U.S. Const. amend. XIV, § 1; Neb. Const. art. I, § 3.

The cases Trammell cites in support of this contention are inapposite, for they involve fact patterns which involve double jeopardy, the filing of greater charges after unsuccessful plea bargaining, and the filing of greater charges after the filing of a notice of appeal, i.e., subsequent action to a defendant's detriment which is taken by the State in the same case after the defendant's successful assertion of a given right. See, *North Carolina v. Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969); *Blackledge v. Perry*, 417 U.S. 21, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974); *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978); *Thigpen v. Roberts*, 468 U.S. 27, 104 S. Ct. 2916, 82 L. Ed. 2d 23 (1984).

It is true that the State initially dismissed the charges against Trammell in this case after he had been convicted of first degree sexual assault and did refile the charges against Trammell in this case after he had successfully appealed the sexual assault conviction. However, the State was entitled to such discretion. We are aware of no authority which supports the proposition that a defendant's successful appeal in one case renders him immune from prosecution for an unrelated offense, even if prior charges for the unrelated offense had previously been dropped.

Thus, the trial court did not err in failing to sustain Trammell's claims regarding prosecutorial vindictiveness.

In his fifth and final summarized assignment of error, Trammell contends that the trial court erred in overruling his motion for a new trial on grounds of juror misconduct.

As noted previously, at trial the district court allowed Nelson to read a portion of the statement in which Trammell confessed

his involvement in the burglary. In that statement Trammell described being at the top of a hill near the scene of the crime and observing the activities of the perpetrators to whom he had provided transportation. Nelson testified that he did not believe that part of Trammell's confession statement because that area was "not really a hilly part of Lincoln." Apparently in response to this discrepancy, a juror took it upon herself to observe the site of the burglary when she "drove by it . . . on [her] way home." At the hearing on Trammell's motion for a new trial, the juror testified that she reported her findings to the other members of the jury, stating:

> I told them that as I drove by, that there had been questions in my mind about who was telling the truth, and there was a hill, as Mr. Trammell had said that there was, and that we go into TSC quite often and that was where the hill began, and I just felt that he was telling the truth in what he had said.

A second juror also testified regarding the observations which the first juror had reported to the jury:

> . . . And where the policeman disagreed with the statement, saying there was no hill, the policeman said that there was no hill, and this juror member said that, well, she drove by the place on her way home from work and she could see where there was a hill, and I think she even said what street it was, and that is how it went.
>
> . . . .
>
> . . . She was just saying that she could see the defendant's statement might be true because she could see where there was a hill, I guess.
>
> . . . .
>
> . . . Later on, we kind of came back to the part about the statement and then I did mention that I didn't think we were even supposed to look at the scene. That was in our instructions, and somebody else said, yeah, that is right. We weren't supposed to go visit any of the scenes, and we kind of just dropped it then.

The trial court found that the juror's misconduct was not prejudicial to Trammell and thus overruled the motion for a new trial. In arguing that the trial court's finding should be

upheld by this court, the State contends that the juror's observations were favorable to Trammell because they supported the truthfulness of his statement concerning the hill. Trammell, however, contends that the juror's observations tended to support the truthfulness of his confession statement as a whole, which statement was a critical part of the case presented by the State.

There is no question that the investigating juror engaged in misconduct by violating the trial judge's instruction directing that in determining any questions of fact, each juror

> should be governed solely by the evidence introduced before you. . . . Each of you may apply to the subject before you that general knowledge which anyone may be presumed to have, yet, if any of you be personally acquainted with any material or particular fact not supported by the evidence, you should not consider your personal knowledge of such fact or mention it to your fellow jurors.
>
> . . . .
> . . . The law demands of you a just verdict uninfluenced by . . . any considerations outside the evidence . . . .

However, in order for juror misconduct to be the basis for a new trial, the misconduct must be prejudicial to the accused. *State v. Woodward*, 210 Neb. 740, 316 N.W.2d 759 (1982). As said in *State v. Menuey*, 239 Neb. 513, 522, 476 N.W.2d 846, 852 (1991), with regard to the misconduct of a bailiff in permitting a discharged alternate juror to intrude into the jury room:

> [N]ot all errors, even if of constitutional magnitude, entitle an accused to the reversal of an adverse trial result; it is only a prejudicial error, that is, an error which cannot be said to have been harmless beyond a reasonable doubt, which requires that a conviction be set aside.

In *State v. McDonald*, 230 Neb. 85, 430 N.W.2d 282 (1988), we held that where the misconduct involves only jurors, the burden to establish prejudice rests on the party claiming the misconduct. We also concluded the fact that two jurors discussed the case between themselves, contrary to their instructions, before it was submitted to them did not entitle the

defendant therein to a new trial. In so ruling, we pointed out that there was no showing as to exactly what the disobedient jurors had said to each other or that any juror had reached any conclusion as to the defendant's guilt or innocence prior to the completion of the trial. In *State v. Woodward, supra*, we held that in order for juror misconduct to vitiate a verdict, it must be shown that the misconduct influenced the jury in arriving at its verdict. We concluded the fact that two jurors inspected the scene of the crime and that some comment may have been made by one concerning what could or could not be seen was not sufficient to invalidate the verdict, as it could not be determined from the record whether the comment was prejudicial or beneficial to the defendant. We also ruled that a trial court's finding that the misconduct did not prejudice the accused would ordinarily not be disturbed on appeal in the absence of an abuse of discretion. In *Phillips v. State*, 157 Neb. 419, 59 N.W.2d 598 (1953), we held that a juror visit to the scene of the crime was not prejudicial. The rebel juror did not impart to his fellow jurors any information involving any material issue in connection with which there was any conflict in the evidence. Neither was there any showing that any juror had been influenced by the information the misbehaving juror conveyed.

Here, however, we are dealing with a renegade juror whose unauthorized investigation and comments to the other jurors tended, as Trammell correctly observes, to corroborate his whole confession. In reporting that Trammell spoke truthfully in regard to the terrain, she implied, and the other jurors were free to infer, that he also spoke truthfully when he confessed his participation in the crime.

While we are not unmindful that in *Arizona v. Fulminante*, _____ U.S. _____, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991), a five-member majority of the U.S. Supreme Court wrote that even the admission of an involuntary confession is subject to harmless-error analysis, the fact remains that a confession is a special type of evidence and that its acceptance basically amounts to a conviction. *State v. Phinney*, 117 N.H. 145, 370 A.2d 1153 (1977). See, also, *State v. Benoit*, 126 N.H. 6, 490 A.2d 295 (1985). In light of the special nature of confessional evidence, we cannot say that an unauthorized visit to the scene

of a crime by a juror who reports information to the other jurors which tends to corroborate a defendant's confession is harmless beyond a reasonable doubt.

We must thus conclude that the trial judge abused his discretion in finding the misconduct nonprejudicial to Trammell.

REVERSED AND REMANDED FOR A NEW TRIAL.

BOSLAUGH, J., dissenting.

I dissent only from that part of the opinion that holds that the misconduct of the jury in this case was prejudicial as a matter of law and, for that reason, the judgment must be reversed and the cause remanded for a new trial.

In his statement to the police, the defendant, Trammell, said that he had observed the burglary from the top of a hill north of Cornhusker Highway, at a point "[b]etween Cornhusker and Superior."

Officer Nelson, on cross-examination, testified that he did not believe parts of the statement which the defendant had made to him. Specifically, Nelson said he did not believe

> [t]he part where [Trammell] described a hill near some houses. That hill would have been close enough for him to run there, to move quickly from the hill to where the crime was . . . taking place, but that it was closer to Superior or because he knew Superior. *20th and Cornhusker is not really a hilly part of Lincoln.*

(Emphasis supplied.)

At the hearing on the motion for new trial one of the jurors, Doris Ward, testified that she lives 3 miles north and a half mile west of 14th and Superior Streets. She uses Cornhusker Highway quite often to go home. On her way home she drove by the site of the burglary. On the next morning, during the deliberations of the jury, she reported her observations to the other members of the jury. This is the misconduct of the jury that, according to the majority, requires the judgment to be reversed.

At the outset, it is far from clear that the defendant and Officer Nelson were talking about the same location. The defendant described a hill somewhere "[b]etween Cornhusker and Superior." Officer Nelson was describing the area at "20th

and Cornhusker," the location where the burglary itself occurred.

In this case, the question as to whether there was a hill near the crime scene was a collateral matter which was not an issue in the case. Although Officer Nelson's testimony indicates that he was not aware of the presence of a hill near the site of the burglary, the defendant's description of such a hill was an insignificant collateral detail in the statement which the defendant gave to police. That statement described the defendant's involvement in the burglary and provided ample evidence to support the conviction irrespective of the existence or nonexistence of the hill in question.

While the majority holds that the juror's observation of a hill "tended . . . to corroborate his whole confession," the observation is trivial in comparison to the other corroboratory evidence which was presented to the jury. In a portion of Trammell's confession which was read to the jury, Trammell recounts concealing "at least three cases or more" of stolen beer and "more than 30" bottles of stolen whiskey at his residence. This confessional evidence is corroborated by the undisputed testimony of the two police officers, who recovered the stolen beer and liquor from the very place within the Trammell residence where the defendant confessed that he had stored it. Certainly that evidence was far superior in corroborating the truthfulness of the defendant's confession when compared to a juror's observation of a hill near the crime scene. Consequently, when viewed in the context of the entire record before us, the juror's actions were inconsequential, and the juror's conduct could not be said to have prejudiced the rights of the defendant as a matter of law.

For a juror's unauthorized inspection of an alleged crime scene to be sufficient to vitiate a conviction, it must be shown to have related to a matter in dispute and to have influenced the jury in arriving at a verdict. *Phillips v. State*, 157 Neb. 419, 59 N.W.2d 598 (1953). See, also, *State v. Woodward*, 210 Neb. 740, 316 N.W.2d 759 (1982). Where the trial court has determined that an unauthorized inspection of the crime scene was not prejudicial to the rights of the defendant, ordinarily its finding will not be disturbed by the appellate court in the

absence of an abuse of discretion. *Id.*

An error is harmless if, on review of the entire record, it did not influence the jury in a verdict adverse to a substantial right of the defendant. *State v. Christian*, 237 Neb. 294, 465 N.W.2d 756 (1991).

The evidence of guilt in this case is overwhelming. The defendant was charged with aiding the consummation of a felony by intentionally aiding another to secrete, disguise, or convert the proceeds of the burglary at the Star City Eagles Club, 2050 Cornhusker Highway, Lincoln, Nebraska, on November 5, 1986. There is no serious dispute in the evidence concerning any of the elements of this crime. The evidence of the State was uncontradicted. Under these circumstances, I believe it is impossible to conclude that the misconduct of the jury was prejudicial as a matter of law.

I would affirm.

HASTINGS, C.J., joins in this dissent.