STATE OF NEBRASKA, APPELLEE, V. LAVELL DEAN FLYE,
APPELLANT.
507 N.W.2d 493

Filed October 12, 1993.   No. A-92-808.

Dorothy A. Walker, of Mowbray & Walker, P.C., for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

CONNOLLY, IRWIN, and WRIGHT, Judges.

IRWIN, Judge.

Lavell Dean Flye appeals his conviction of criminal mischief involving a pecuniary loss in excess of $300 and his being sentenced as a habitual criminal. For the reasons recited below, we affirm in part, and in part reverse and remand for a new trial.

## FACTUAL BACKGROUND

In February 1991, appellant was charged with first degree sexual assault and burglary in Lancaster County. On July 15, while in detention awaiting trial on these charges, appellant was charged with criminal mischief causing a pecuniary loss in excess of $300, a Class IV felony, after appellant vandalized his jail cell. On August 8, while still incarcerated, appellant was charged with second degree assault, also a Class IV felony.

On October 4, 1991, the State offered to allow appellant to plead guilty to the burglary charge and one misdemeanor charge, in exchange for which all other charges pending against appellant would be dismissed. The State informed appellant that if he did not accept the plea offer, he would be charged as a habitual criminal regarding all of his pending felony charges. Appellant rejected the plea offer.

On October 29, 1991, the trial court granted the State leave to amend the information in the proceedings regarding the sexual assault and burglary charges to allege that appellant was a

habitual criminal. On November 5, a jury acquitted appellant of the sexual assault and burglary charges.

Subsequent to the above trial, but prior to appellant's separate trials on the criminal mischief and second degree assault charges, appellant was advised that he would be charged as a habitual criminal regarding both of those charges. The State rejected appellant's offer to plead guilty to one Class IV felony and one Class I misdemeanor and filed informations that included the habitual criminal allegations on November 22, 1991.

Appellant thereafter filed a plea in abatement in the proceedings regarding the criminal mischief charge, alleging that the habitual criminal charge filed against him in the pending case was an act of "prosecutorial vindictiveness intended to punish the defendant for successfully exercising his right to a jury trial" in the prior sexual assault and burglary proceedings. The district court denied appellant's plea in abatement. A jury subsequently found appellant guilty of criminal mischief, with the property damaged having a pecuniary loss value of $1,147. Appellant thereafter filed a motion for new trial, which the district court denied. At the enhancement hearing in August 1992, the district court found appellant to be a habitual criminal and sentenced him to "10 years." Appellant filed a timely notice of appeal to this court.

## ASSIGNMENTS OF ERROR

Appellant alleges that the district court erred in (1) failing to find that the State's addition of the habitual criminal charges constituted prosecutorial vindictiveness, (2) instructing the jury on pecuniary loss regarding appellant's criminal mischief charge, (3) failing to find the verdict unsupported by evidence beyond a reasonable doubt, and (4) abusing its discretionary authority to place appellant on probation in lieu of sentencing appellant to confinement.

## DISCUSSION

*Prosecutorial Vindictiveness.*

In his first assignment of error, appellant claims that the district court erred in failing to find that the State's addition of habitual criminal charges in the assault and criminal mischief

cases was the result of prosecutorial vindictiveness and, therefore, violated appellant's due process rights. See, U.S. Const. amend. XIV, § 1; Neb. Const. art. I, § 3. Specifically, appellant asserts that the decision to charge him as a habitual criminal in the assault and criminal mischief cases was vindictive because it was made in response to appellant's "successful exercise of his right to trial in the rape and burglary case." Brief for appellant at 21. We note that this appeal addresses only the criminal mischief case against appellant and that the assault case is not before this court.

The U.S. Supreme Court has addressed the issue of vindictiveness against a defendant on several occasions. In *North Carolina v. Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), the Court discussed whether the 14th Amendment Due Process Clause was violated when a defendant was given a harsher sentence on reconviction after successfully asserting his right to an appeal. The Court held that while there was no absolute bar to a harsher sentence on reconviction, due process required that "vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." 395 U.S. at 725.

In *Blackledge v. Perry*, 417 U.S. 21, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974), the Court applied the principles of *Pearce* to hold that a prosecutor cannot reindict a convicted defendant on greater charges after the defendant has invoked his right to appeal his conviction for the same charges. The Court in *Blackledge* stated that the Due Process Clause is violated in situations that pose a "realistic likelihood of 'vindictiveness.' " 417 U.S. at 27.

The U.S. Supreme Court has addressed alleged prosecutorial vindictiveness in the pretrial setting in *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978), and *United States v. Goodwin*, 457 U.S. 368, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982).

In *Bordenkircher*, the Court held that the Due Process Clause of the 14th Amendment did not prohibit a prosecutor from carrying out a threat made during plea negotiations. The prosecutor in *Bordenkircher* had threatened during plea

negotiations to reindict the defendant on a habitual criminal charge if the defendant did not plead guilty to a felony charge of uttering a forged instrument. The defendant refused to plead guilty, and the prosecutor reindicted the defendant on the habitual criminal charge. The defendant was then convicted, and he was sentenced to life imprisonment, as required by the habitual criminal statute. Acknowledging the importance of plea bargaining to this country's criminal justice system, the Court held that "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." 434 U.S. at 363.

In *Goodwin*, the Court addressed whether a presumption of vindictiveness was warranted in evaluating the prosecutor's *pretrial* response to the defendant's demand for a jury trial. In that case, the defendant was charged with several misdemeanor charges. After initially expressing an interest in plea bargaining on the misdemeanor charges, the defendant decided not to plead guilty and requested a jury trial. Thereafter, the prosecutor indicted the defendant on a felony charge for the same conduct. The defendant was convicted of the felony charge, and he appealed on the basis of prosecutorial vindictiveness. The U.S. Court of Appeals for the Fourth Circuit reversed the conviction, holding that a legal presumption of prosecutorial vindictiveness applies where a defendant is reindicted on more serious charges after invoking his right to a jury trial. The U.S. Supreme Court reversed, stating that a presumption of prosecutorial vindictiveness was not warranted in the *pretrial* setting. The Court reasoned that "a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." 457 U.S. at 380. The Court also stated that "[a] prosecutor should remain free *before trial* to exercise . . . broad discretion [and his] initial decision should not freeze future conduct." (Emphasis supplied.) 457 U.S. at 382. However, the Court concluded that a defendant "in an appropriate case might prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do." 457

U.S. at 384. No such showing was made according to the record.

██ The above discussion reveals that a presumption of prosecutorial vindictiveness applies where the State seeks a more severe punishment for a defendant *after* the defendant has exercised his legal right to attack his original conviction. However, no presumption of prosecutorial vindictiveness arises where a prosecutor imposes more severe charges on a defendant in a *pretrial* context responding to the defendant's rejection of a prosecutor's plea offer.

Unlike the situation in *Blackledge*, appellant does not allege that prosecutorial vindictiveness resulted from appellant's exercise of his right to appeal his conviction on any of the charges brought against him. Neither does appellant allege that prosecutorial vindictiveness resulted from his rejection of the State's plea offer, as in *Goodwin* and *Bordenkircher*. Rather, appellant alleges that the State filed additional charges against him in the criminal mischief case as a result of appellant's exercise of his right to trial in the *separate and unrelated* sexual assault and burglary proceedings.

Not only does appellant's allegation of prosecutorial vindictiveness lack authority, but principles announced in the above-cited cases indicate that no prosecutorial vindictiveness existed in this case. Appellant has failed to show that a realistic likelihood of vindictiveness existed in this case. See *Blackledge, supra*.

██ The Nebraska Supreme Court has rejected allegations of prosecutorial vindictiveness in a case similar to the one before this court. In *State v. Trammell*, 240 Neb. 724, 484 N.W.2d 263 (1992), the State prosecuted the defendant on two unrelated charges, sexual assault and aiding the consummation of a felony, in separate proceedings. After the defendant was convicted of sexual assault, the prosecutor dismissed the separate charge for aiding the consummation of a felony. However, the prosecutor reinstated the aiding charge after the defendant successfully appealed his conviction for sexual assault. The court in *Trammell* found no prosecutorial vindictiveness, stating: "We are aware of no authority which supports the proposition that a defendant's successful appeal in

one case renders him immune from prosecution for an unrelated offense, even if prior charges for the unrelated offense had previously been dropped." *Id.* at 734, 484 N.W.2d at 270. Likewise, we find that the State's filing of a habitual criminal charge in appellant's criminal mischief proceeding after appellant's successful assertion of his right to trial on the sexual assault and burglary charges does not constitute prosecutorial vindictiveness.

*Pecuniary Loss Instruction.*

Appellant alleges in his second assignment of error that the trial judge failed to properly instruct the jury on pecuniary loss with regard to his conviction for criminal mischief.

A trial court has a duty to instruct the jury on the law of the case, whether requested to do so or not. *State v. Pierce*, 231 Neb. 966, 439 N.W.2d 435 (1989). When read conjunctively, all jury instructions must correctly state the law, adequately state the issues, and not mislead the jury. *State v. Johnson*, 236 Neb. 831, 464 N.W.2d 167 (1991).

The statute defining the crime of criminal mischief states in relevant part as follows:

(1) A person commits criminal mischief if he or she:

(a) Damages property of another intentionally or recklessly . . . .

(2) Criminal mischief is a Class IV felony if the actor intentionally causes pecuniary loss in excess of three hundred dollars . . . .

(3) Criminal mischief is a Class II misdemeanor if the actor intentionally causes pecuniary loss in excess of one hundred dollars.

(4) Criminal mischief is a Class III misdemeanor if the actor intentionally or recklessly causes pecuniary loss in an amount of one hundred dollars or less, or if his or her action results in no pecuniary loss.

Neb. Rev. Stat. § 28-519 (Reissue 1989). Pecuniary loss is not an element of the crime of criminal mischief. Rather, "[t]he function of 'pecuniary loss' in relation to the crime of criminal mischief is establishment of the grade of the offense to determine which punishment or penalty may be imposed on

conviction for criminal mischief." *Pierce*, 231 Neb. at 971-72, 439 N.W.2d at 440.

The trial court in the present case instructed the jury on pecuniary loss as follows: " 'Pecuniary loss' means loss in the form of money, property, commercial interest or anything else, the primary significance of which is economic loss."

Appellant alleges that this instruction is erroneous under *Pierce*. In *Pierce*, the defendant was charged with criminal mischief following an incident in which he drove his car into a store employee's vehicle after the employee had refused to accept forged checks from the defendant. The only evidence regarding pecuniary loss at the trial was testimony that the cost to repair the employee's vehicle exceeded $500. There was no evidence of the market value of the employee's vehicle. In a jury instruction, the trial court defined pecuniary loss as " 'loss in the form of money, property, commercial interest, or anything else, the primary significance of which is economic loss.' " *Id.* at 970, 439 N.W.2d at 439. The jury convicted the defendant of criminal mischief.

■ The Nebraska Supreme Court in *Pierce* held that the pecuniary loss instruction was "incomplete and misleading, constituting prejudicial error." *Id.* at 976, 439 N.W.2d at 443. The court reasoned that the instruction "permitted the jury to speculate about various losses, including a loss of a commercial interest 'or anything else' which involved 'economic loss.' " *Id.* The court stated that the term "pecuniary loss," as used in § 28-519, means "monetary loss suffered by another as the result of the defendant's conduct which constitutes criminal mischief under § 28-519." *Pierce*, 231 Neb. at 975, 439 N.W.2d at 442.

■ The Supreme Court in *Pierce* concluded that although sufficient evidence existed to "sustain the finding of fact necessary for imposition of the felony punishment . . . the erroneous instruction on pecuniary loss necessitates . . . setting aside the jury's finding concerning the extent of pecuniary loss." *Id.* at 981, 439 N.W.2d at 446. We are therefore compelled to reach that same conclusion and direct that a new trial be held to determine the extent of pecuniary loss resulting from appellant's criminal mischief. This in no way affects appellant's

conviction for criminal mischief, and the conviction is affirmed. We note that appellant's counsel did not object to this instruction. However, this erroneous jury instruction constitutes plain error.

Although an appellate court does not consider assignments of error not listed and discussed in the briefs, it always reserves the right to note plain error which was not complained of at trial or on appeal but is plainly evident from the record, and which is of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

*Design Data Corp. v. Maryland Cas. Co.*, 243 Neb. 945, 958, 503 N.W.2d 552, 561 (1993).

*Value of the Pecuniary Loss.*

Due to the disposition of the previous assigned error, we need not address appellant's assigned errors concerning the value of the pecuniary loss or the lawfulness of the sentence.

## CONCLUSION

We find that the addition of a habitual criminal charge in this case was not the result of prosecutorial vindictiveness, and we affirm appellant's conviction for criminal mischief. However, because the pecuniary loss instruction given in this case constituted plain error, we reverse the jury's finding regarding the extent of pecuniary loss resulting from this crime, vacate the sentence imposed and the imposition of an enhanced penalty, and remand the cause for a new trial regarding the extent of pecuniary loss resulting from appellant's criminal mischief.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR A NEW TRIAL.

WRIGHT, Judge, dissenting.

I respectfully dissent from the decision of the majority, which concludes that the pecuniary loss instruction constituted plain error requiring the court to reverse the jury's finding regarding the extent of pecuniary loss resulting from this crime.

The jury found the defendant guilty of criminal mischief, with the property damage having a pecuniary loss value of $1,147. In the present case, the trial court gave the following instruction as to pecuniary loss: " 'Pecuniary loss' means loss

in the form of money, property, commercial interest or anything else, the primary significance of which is economic loss." This same instruction was given in *State v. Pierce*, 231 Neb. 966, 439 N.W.2d 435 (1989).

In *Pierce*, the Supreme Court held that such an instruction was incomplete and misleading, constituting prejudicial error which permitted the jury to speculate about various losses, including the loss of a commercial interest or anything else which involved economic loss. The court stated that the term "pecuniary loss" means "monetary loss suffered by another as the result of the defendant's conduct which constitutes criminal mischief under § 28-519." *Pierce*, 231 Neb. at 975, 439 N.W.2d at 442. The court in *Pierce* concluded that although there was significant evidence to sustain a finding of fact necessary for the imposition of the felony punishment, the instruction for pecuniary loss required setting aside the jury's findings concerning the extent of pecuniary loss.

As I review the record, the jury could not have been misled by the instruction given in the present case. The jury may have been able to speculate in *Pierce* concerning various losses, including a commercial interest or anything else which involved an economic loss and therefore may have been misled.

Here, there is no doubt as to what the pecuniary loss was in connection with the crime charged. The evidence of the damage caused by the defendant in the Lancaster County jail included the following costs for replacement and repair: $138 for a security shelf, $36 for labor to replace the shelf, $45 for a stainless steel mirror, $144 for labor to replace the mirror, $50 for caulking the mirror, $150 for replacing concrete blocks, $100 for painting, $318 for a light fixture, $50 for caulking the light fixture, and $116 for labor to install the light fixture. These costs total $1,147. The jury assessed the value of the pecuniary loss at $1,147.

The defendant did not consider the instruction prejudicial, and I have no doubt that the defendant was not prejudiced by this instruction. I would affirm the judgment and the sentence of the district court.