plain error in the juvenile court's February 26 order finding that reasonable efforts in support of reunification were no longer required, that the primary permanency objective for Jasmine was to be independent living, and that the primary permanency objective for Samantha was to be guardianship with a concurrent plan of adoption. Accordingly, we affirm the court's order.

Affirmed.

———————

State of Nebraska, appellee, v.
Kaylene M. Rieger, appellant.
___ N.W.2d ___

Filed November 1, 2013.    No. S-13-456.

1. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.
2. **Sentences: Probation and Parole.** It is within the discretion of the trial court whether to impose probation or incarceration.
3. ____: ____. When a court sentences a defendant to probation, it may impose any conditions of probation that are authorized by statute.
4. ____: ____. Whether a condition of probation imposed by the sentencing court is authorized by statute is a question of law.
5. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

Appeal from the District Court for Sarpy County, Max Kelch, Judge, on appeal thereto from the County Court for Sarpy County, Robert C. Wester, Judge. Sentence vacated in part, and cause remanded with directions.

Liam K. Meehan, of Schirber & Wagner, L.L.P., for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Stephan, J.

Kaylene M. Rieger entered a guilty plea to one count of false reporting. She was sentenced by the county court for Sarpy County to probation for 18 months. As a condition of probation, she was directed to have no contact with her husband without the court's permission. The district court affirmed the sentence, and Rieger then perfected this timely appeal. We conclude that the broad prohibition on Rieger's contact with her husband is an unreasonable infringement upon Rieger's fundamental rights arising from marriage and an abuse of sentencing discretion. We therefore remand for resentencing.

## BACKGROUND

Rieger and Gavin Vreeland were married on August 25, 2012. At the time of the marriage, Rieger had two children from previous relationships. In September 2012, police received a report that her 5-year-old son had bruises on his lower back. Rieger told officers that she had caused the bruising when she spanked the child. However, police officers learned that the child told his grandmother that Vreeland had spanked him and had caused the injuries. The child told police officers that it was mostly Vreeland who spanked him and that Vreeland spanked hard enough to make him cry. The child appeared confused as to whether his mother told him to blame the injuries on Vreeland or herself. Officers talked to Rieger again, and she continued to accept responsibility for spanking the child, but officers later spoke with Vreeland, who admitted to causing the injuries.

Rieger was charged with one count of false reporting, a Class I misdemeanor,[1] and one count of tampering with a witness, a Class IV felony.[2] She entered a guilty plea to the false

---

[1] Neb. Rev. Stat. § 28-907 (Reissue 2008).

[2] Neb. Rev. Stat. § 28-919 (Reissue 2008).

reporting charge, and the other charge was dismissed by the State. At the plea hearing, the court inquired whether there was any pending juvenile proceeding, and Rieger responded that there was not. Her counsel added that it was his understanding that the Department of Health and Human Services (DHHS) had found the "abuse allegations" to be "unfounded." The court ordered a presentence investigation and scheduled a sentencing hearing.

According to the presentence investigation report (PSR), Rieger had no prior record other than traffic offenses. The PSR indicated that Rieger and Vreeland were currently married and that he was a "co-defendant in this present offense," but the PSR did not disclose the status or disposition of any charges against him. The report disclosed that Rieger was disabled and stated that she had been diagnosed with posttraumatic stress disorder, chronic migraines, depression, hypertension, a stroke, and a brain tumor. It noted that Vreeland was unemployed. The probation officer made no sentencing recommendation, but included several recommended conditions if the court decided to place Rieger on probation. One of these recommendations was that she "avoid social contact with persons having criminal records," but the report made no specific reference to future contact with Vreeland.

At the sentencing hearing, Rieger stated that she and Vreeland were still living in the same home. She stated that Vreeland had been around her son since he was less than 1 year old and that she had never "seen [Vreeland] do anything like this" previously. The prosecutor noted that according to the PSR, Vreeland "admitted to spanking the kids in the past and indicated that [Rieger] knew that." The court again inquired whether Rieger's children were involved in juvenile proceedings. Rieger's counsel responded: "No. The DHHS found that these allegations were unfounded, kept them in the home, and then there are still criminal matters proceeding. I believe . . . Vreeland had a child abuse charge against him and she had the false reporting charge." Later in the hearing, the prosecutor advised the court that Vreeland had entered a guilty plea to "child abuse" and Rieger stated that he was awaiting sentencing.

The county court told Rieger she could be placed on probation if she agreed to keep Vreeland out of the house while she was on probation or she could go to jail for 15 days, in which case, she would not receive some of her prescription medications. After inquiring about the failure of Rieger's relationships with the fathers of her children, the court stated: "So you pick losers. . . . And . . . my guess is that's related to you feel so bad about yourself that . . . you'll put up with someone just so that they'll be there." The court further observed that Rieger had "an instinctual way of finding a guy that's kind of at the bottom of the barrel that will put up with you and you put up with him, and that's the way it is."

The court placed Rieger on probation for 18 months with conditions, including completion of a psychological evaluation, weekly individual counseling, and weekly attendance at a women's group. Rieger was also ordered to have "No contact with . . . [V]reeland" without permission of the court. The court said it would permit contact between Rieger and Vreeland only if there was "some kind of intense therapeutic deal."

Rieger appealed to the district court, which affirmed the sentence. The district court found the no-contact condition was reasonable because both the factual basis for the plea and the PSR left unresolved the question of whether Vreeland had committed child abuse. The court reasoned that the protection of a young child superseded any relationship between Rieger and Vreeland. Rieger filed this timely appeal. We moved the appeal to our docket on our own motion pursuant to our authority to regulate the caseloads of the appellate courts of this state.[3] It was submitted without oral argument pursuant to Neb. Ct. R. App. P. § 2-111(E)(5)(a) (rev. 2008).

## ASSIGNMENTS OF ERROR

Rieger assigns, restated and summarized, that the condition of probation that she have no contact with Vreeland was an abuse of discretion because it violated her fundamental rights inherent in the marital relationship and was not reasonably

---

[3] See, Neb. Rev. Stat. § 24-1106(3) (Reissue 2008); Neb. Ct. R. App. P. § 2-102(C) (rev. 2012).

related to her rehabilitation. In addition, she contends that the 18-month period of probation is excessive in light of her minimal prior record.

## STANDARD OF REVIEW

[1,2] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.[4] It is within the discretion of the trial court whether to impose probation or incarceration.[5]

## ANALYSIS

### No-Contact Condition

[3,4] When a court sentences a defendant to probation, it may impose any conditions of probation that are authorized by statute.[6] Whether a condition of probation imposed by the sentencing court is authorized by statute is a question of law.[7] The applicable statute provides that "[w]hen a court sentences an offender to probation, it shall attach such reasonable conditions as it deems necessary or likely to insure that the offender will lead a law-abiding life."[8] These include requiring the offender to "meet his or her family responsibilities,"[9] to "refrain from frequenting unlawful or disreputable places or consorting with disreputable persons,"[10] and to "satisfy any other conditions reasonably related to the rehabilitation of the offender."[11] We construe these provisions to authorize a no-contact condition of

---

[4]  *State v. Dixon, ante* p. 334, ___ N.W.2d ___ (2013).

[5]  *State v. Wills*, 285 Neb. 260, 826 N.W.2d 581 (2013).

[6]  *State v. Kuehn*, 273 Neb. 219, 728 N.W.2d 589 (2007); *State v. Lobato*, 259 Neb. 579, 611 N.W.2d 101 (2000).

[7]  *State v. Dinslage*, 280 Neb. 659, 789 N.W.2d 29 (2010); *State v. Lobato*, *supra* note 6.

[8]  Neb. Rev. Stat. § 29-2262(1) (Cum. Supp. 2012).

[9]  § 29-2262(2)(c).

[10]  § 29-2262(2)(h).

[11]  § 29-2262(2)(r).

probation when it is reasonable and necessary to the rehabilitative goals of probation.

From our review of the record, it appears that the sentencing judge imposed the no-contact condition as a means of requiring Rieger to fulfill her parental responsibility to protect her children from potential future harm. Rieger contends that the no-contact condition must be subjected to heightened scrutiny because it affects the marital relationship, which the U.S. Supreme Court has described as "one of the 'basic civil rights of man,' fundamental to our very existence and survival."[12] Although we have not previously addressed this precise issue, Rieger's position is consistent with the analytical approach taken by other jurisdictions.

For example, in *Dawson v. State*,[13] an Alaska appellate court invalidated a condition of probation which precluded contact between the defendant and his wife, with whom he had been involved in selling drugs. Alaska law required conditions of probation to be reasonably related to the rehabilitation of the offender and the protection of the public, and subjected conditions which restricted constitutional rights to special scrutiny to determine whether the restriction served those goals. The Alaska court found that the spousal no-contact condition "plainly implicate[d] the constitutional rights of privacy, liberty and freedom of association."[14] It reasoned that while such restrictions could be justified by case-specific circumstances, "to avoid unnecessary intrusion on marital privacy, it [is] appropriate to tailor a close fit between the scope of the order restricting marital association and the specific needs of the case at hand."[15] The court ultimately vacated the no-contact provision upon determining it was not specifically tailored to the circumstances and therefore was unduly restrictive of liberty. However, it stated that the trial court, on remand, could

---

[12] *Loving v. Virginia*, 388 U.S. 1, 12, 87 S. Ct. 1817, 18 L. Ed. 2d 1010 (1967), quoting *Skinner v. Oklahoma*, 316 U.S. 535, 62 S. Ct. 1110, 86 L. Ed. 2d 1655 (1942).

[13] *Dawson v. State*, 894 P.2d 672 (Alaska App. 1995).

[14] *Id*. at 680.

[15] *Id*. at 681.

in its discretion "consider the appropriateness of a more limited special condition."[16]

Applying similar reasoning, the Supreme Court of Oregon in *State v. Martin*[17] set aside a condition of probation which barred contact between a woman convicted of forgery and her husband, who was also involved in the crime. The trial court reasoned that the no-contact condition was justified because the wife's counsel had argued at sentencing that the husband was largely to blame for her crimes and, thus, barring contact was necessary for rehabilitation. The Oregon Supreme Court stated that this "might have been sufficient to support a condition of probation that defendant not associate with her former partner in crime, had that person not been her spouse."[18] But the court reasoned that "where fundamental rights are involved the sentencing court has less discretion to impose conditions in conflict therewith."[19] The court stated that the sentencing court should have made more detailed factual findings regarding any potential harm which could result from marital contact and should consider whether "interference with marital rights less than complete separation would serve to protect society's interests."[20]

Also instructive is *State v. Ancira*.[21] As a condition of probation, the defendant was required to have no contact with his wife or his two minor children for 5 years. The sentencing court stated that the order was necessary to protect the children, who had witnessed an incident of domestic violence between their parents. The appellate court reasoned that restriction of the fundamental right of a parent to have contact with his children could only be justified if reasonably necessary to prevent harm to the children and that the total prohibition of any form of contact had not been shown to be reasonably necessary to

---

[16] *Id.*

[17] *State v. Martin*, 282 Or. 583, 580 P.2d 536 (1978).

[18] *Id.* at 589, 580 P.2d at 539.

[19] *Id.* at 589, 580 P.2d at 540.

[20] *Id.*

[21] *State v. Ancira*, 107 Wash. App. 650, 27 P.3d 1246 (2001).

protect the children. The court also noted that while some limitations on the defendant's visitation rights might be warranted, the family and juvenile courts were better equipped to make such determinations. It therefore struck the no-contact provision involving the defendant's children.

Even courts which have upheld restrictions on contact with spouses or children as a condition of probation recognize that such restrictions must be subjected to greater scrutiny than no-contact provisions involving unrelated persons. For example, in *People v. Jungers*,[22] a California court upheld a condition of probation which prohibited a defendant convicted of a felony involving domestic violence from initiating contact with the victim, his wife. Noting that restrictions on constitutional rights must be "carefully tailored and 'reasonably related to the compelling state interest' in reforming and rehabilitating the defendant,"[23] the court reasoned that the condition "did not impose a complete ban on association or marital privacy, but only a narrowly tailored condition consistent with [the defendant's] rehabilitation and the safety of the victim."[24] The court noted that the condition did not preclude the defendant from participating in marital contacts, but only from initiating such contacts, and was therefore a reasonable restriction which did not interfere with the marital relationship to an impermissible degree.

Likewise, in *Commonwealth v. Lapointe*,[25] the Supreme Judicial Court of Massachusetts upheld a condition of probation which prohibited the defendant, who had been convicted of sexually assaulting his minor daughter, from residing in a home with his victim or other minor children. Recognizing that parental rights were constitutionally protected, the court reasoned that "[i]n cases where a condition touches on constitutional rights, the goals of probation 'are best served if the conditions of probation are tailored to address the particular

---

[22] *People v. Jungers*, 127 Cal. App. 4th 698, 25 Cal. Rptr. 3d 873 (2005).

[23] *Id*. at 704, 25 Cal. Rptr. 3d at 878.

[24] *Id*. at 705, 25 Cal. Rptr. 3d at 879.

[25] *Commonwealth v. Lapointe*, 435 Mass. 455, 759 N.E.2d 294 (2001).

characteristics of the defendant and the crime.'"[26] The court concluded that the residency restriction was reasonably tailored to the circumstances because the defendant had targeted minors residing in his home and had used the family relationship to perpetrate his abuse.

Although it did not involve a spousal no-contact provision, this court's opinion in *State v. Morgan*[27] provides support for Rieger's argument that a no-contact provision which infringes upon a fundamental right should be subjected to a higher degree of scrutiny. At issue in *Morgan* was a condition of probation which required the defendant, who had been convicted of selling marijuana, to submit to a search of his person or property at any time during the probationary period, without probable cause. The defendant challenged the search condition, alleging that it violated his Fourth Amendment rights. This court stated that while "such conditions should be sparingly imposed and should be reasonably related to the offense for which the defendant was convicted,"[28] they are valid and constitutional "to the extent that they contribute to the rehabilitation process and are done in a reasonable manner."[29] We conclude that the same principles should apply to a condition of probation which prohibits or restricts a probationer's contact with a spouse and that such a condition should be narrowly tailored and reasonably related to the rehabilitative process.

In considering whether a probation condition is narrowly tailored and reasonably related to the goal of rehabilitation, we consider both its purpose and scope. There is no indication in the record that the no-contact condition was necessary to protect Rieger from Vreeland. Rather, as we have noted, it appears that the condition was designed to protect Rieger's children from Vreeland. But the need for such protection is unclear from the record. In response to questions from the court prior to entry of the order of probation, Rieger's counsel

---

[26] *Id.* at 459, 759 N.W.2d at 298.

[27] *State v. Morgan*, 206 Neb. 818, 295 N.W.2d 285 (1980).

[28] *Id.* at 825, 295 N.W.2d at 288.

[29] *Id.* at 827, 295 N.W.2d at 289.

twice indicated that the State had declined to institute juvenile abuse and neglect proceedings. Although the prosecutor advised the court that Vreeland had entered a guilty plea to a "child abuse" charge, the record does not disclose whether this was a misdemeanor charge of negligent child abuse or a felony charge of knowing and intentional abuse.[30] Nor does the record disclose whether Vreeland had any prior record of child abuse or assaultive behavior. And there is no evidence that Vreeland was complicit in Rieger's false reporting. When police questioned Vreeland after receiving Rieger's report, he readily admitted that he had administered the spanking which resulted in the bruising.

But even assuming that some protective measure was required, the broad no-contact provision included in the order of probation is not narrowly tailored to that purpose. It forbids *any* form of contact between Rieger and Vreeland without court permission, which the court indicated it would only consider in connection with "some kind of intense therapeutic deal." We cannot discern from this record any reason that a less restrictive condition, such as one permitting supervised contact in the presence of the children, unsupervised contact without the children present, or telephone or e-mail communication, would not have been sufficient to protect Rieger's children.

[5] As noted, we review criminal sentences for abuse of discretion. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[31] Because the no-contact condition at issue here affects Rieger's fundamental rights attendant to her marriage and the record does not establish that the prohibition of marital contact was narrowly tailored and reasonably necessary to protect Rieger's children or serve any rehabilitative purpose, we conclude that the inclusion of this condition in the order

---

[30] See Neb. Rev. Stat. § 28-707 (Cum. Supp. 2012).

[31] *State v. Merchant*, 285 Neb. 456, 827 N.W.2d 473 (2013); *State v. Pereira*, 284 Neb. 982, 824 N.W.2d 706 (2013).

of probation was an abuse of discretion. This error requires that we remand the cause for resentencing to permit the county court either to remove the no-contact condition or to tailor it more narrowly to the factual circumstances of the case and the rehabilitative goals sought to be achieved.[32]

## LENGTH OF PROBATION

Rieger also contends in this appeal that the 18-month term of her probation was excessive. The maximum term of probation upon conviction for a first offense misdemeanor is 2 years.[33] Thus, an 18-month term of probation is within statutory limits and may be disturbed on appeal only for an abuse of discretion.[34]

We find none. Rieger's offense was a Class I misdemeanor, the most serious of misdemeanor offenses, which carries a maximum sentence of 1 year's imprisonment and a fine of $1,000.[35] The conditions of probation included counseling and other rehabilitative measures. We discern no abuse of discretion in the county court's determination that 18 months was an appropriate period in which to accomplish the rehabilitative goals of probation. The fact that the term of probation was longer than the maximum term of imprisonment for the offense is of no consequence, because § 29-2263(1) specifically authorizes a maximum probation term of 2 years for persons convicted of first-offense misdemeanors.

## CONCLUSION

As we have noted, the error with respect to the spousal no-contact condition requires that we remand the cause for resentencing to permit the county court either to remove the condition or to tailor it more narrowly to the factual circumstances of the case and the rehabilitative goals sought to be achieved, while providing any necessary protection to the

---

[32] See, *State v. Salyers*, 239 Neb. 1002, 480 N.W.2d 173 (1992); *Dawson v. State, supra* note 13.

[33] See Neb. Rev. Stat. § 29-2263(1) (Reissue 2008).

[34] See *State v. Dixon, supra* note 4.

[35] See Neb. Rev. Stat. § 28-106(1) (Cum. Supp. 2012) and § 28-907.

minor children. We therefore vacate that portion of the sentence of probation which prohibits Rieger from having any contact with Vreeland and remand the cause to the district court with directions to remand it to the county court with instructions to resentence Rieger in conformity with this opinion. The sentence is affirmed in all other respects.

SENTENCE VACATED IN PART, AND CAUSE
REMANDED WITH DIRECTIONS.